EILEEN D. COHEN,[1] PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7174-87.          Filed May 15, 1989.

*Phillip H. Martin* and *Michael J. McDonnell,* for the petitioner.

*John C. Schmittdiel,* for the respondent.

---

[1]The parties in docket Nos. 7172-87 and 7690-87 (the petitioners are Melvin S. Cohen, and Edith Phillips, respectively) have stipulated that they will be bound by our decision in docket No. 7174-87 as if each of the petitioners were the petitioner in docket No. 7174-87.

OPINION

WILLIAMS, *Judge:* The Commissioner determined deficiencies in petitioner's Federal gift tax in the following taxable periods and amounts:

| Calendar period ending | Deficiency |
| --- | --- |
| Sept. 30, 1980 | $15,599 |
| Dec. 31, 1980 | 19,782 |
| Mar. 31, 1981 | 20,515 |
| Jun. 30, 1981 | 30,096 |
| Sept. 30, 1981 | 32,379 |
| Dec. 31, 1982 | 75,140 |
| Dec. 31, 1983 | 142,033 |
| Dec. 31, 1984 | 2,954 |
| Total deficiencies | 338,498 |

The issue we must decide is the appropriate interest rate to use in valuing the gift that results from an interest-free demand loan pursuant to *Dickman v. Commissioner,* 465 U.S. 330 (1984).

The facts of this case have been fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure, and are so found. Eileen D. Cohen, petitioner, is an individual who resided in Eau Claire, Wisconsin, during the period involved and when her petition was filed.

The Alyssa Marie Alpine Trust (First Trust) is an irrevocable trust formed by petitioner and Melvin S. Cohen, petitioner's spouse, pursuant to a trust agreement for the Benefit of Alyssa Marie Alpine dated October 19, 1977, which designates Alyssa Marie Alpine (Alyssa) as its principal beneficiary. Alyssa is petitioner's granddaughter. The Alyssa Marie Alpine Trust No. 2 (Second Trust) is an irrevocable trust formed by Edith Phillips (Edith), petitioner's mother, pursuant to a trust agreement dated March 13, 1980, which designates Alyssa as its principal beneficiary. The 1983 Cohen Family Trust (1983 Trust) is an irrevocable trust Edith formed pursuant to a trust agreement creating the 1983 Cohen Family Trust dated June 3, 1983, which designates certain lineal descendants of Edith as its principal beneficiaries. (Hereinafter, the First Trust, the Second Trust, and the 1983 Trust are referred to collectively as the Trusts.) For Federal income tax purposes, petitioner and the

Trusts reported on the cash basis method of accounting and used the calendar year as their taxable years.

Subsequent to and in reliance upon the court's decision in *Crown v. Commissioner*, 585 F.2d 234 (7th Cir. 1978), affg. 67 T.C. 1060 (1977), petitioner (a resident of the Seventh Circuit) made non-interest-bearing demand loans to the First Trust, the Second Trust, and the 1983 Trust. All of the loans were evidenced by non-interest-bearing demand notes. Petitioner filed a Form 709, United States Quarterly Gift Tax Return, for the calendar periods ended December 31, 1980, and December 31, 1981, reporting certain gifts of cash and property which were excludable from taxable gifts under section 2503(b)[2] as in effect during the calendar years 1980 through 1984. Petitioner inadvertently filed Form 709, United States Quarterly Gift Tax Return, on an annual basis for the calendar years ended December 31, 1980, and December 31, 1981, instead of on a quarterly basis. Petitioner made no taxable gifts during the calendar year ended December 31, 1982, and December 31, 1983, other than the gifts made by the non-interest-bearing demand loans at issue herein, and petitioner originally filed no gift tax returns for these periods.

Petitioner did not report as taxable gifts the transfer of the value of the non-interest-bearing loans to the Trusts relying on the *Crown* decision that such non-interest-bearing loans did not give rise to taxable gifts. On August 16, 1984, after the Supreme Court's decision in *Dickman v. Commissioner, supra,* petitioner filed an amended Form 709, United States Quarterly Gift Tax Return, for the calendar quarters ended December 31, 1980, and December 31, 1981, and filed an (amended) Form 709, United States Gift Tax Return, for the calendar years ended December 31, 1982, and December 31, 1983, reporting values for the non-interest-bearing demand loans made by petitioner to the Trusts as taxable gifts. After the Supreme Court's decision in *Dickman,* petitioner also filed Form 709, United States Gift Tax Return, for the calendar year ended December 31, 1984, reporting a value for the non-interest-bearing demand loans made by petitioner to the Second Trust and the 1983 Trust

[2]All section references are to the Internal Revenue Code of 1954 as in effect for the years at issue, unless otherwise indicated.

as taxable gifts. Petitioner determined the value of the gifts by using the interest rates specified in sections 25.2512-5(e) and 25.2512-9(e), Gift Tax Regs. The rates were 6 percent from the beginning of the period at issue until November 30, 1983, and 10 percent from December 1, 1983, until the end of the period at issue. Although the returns for the calendar years ended December 31, 1982, and December 31, 1983, were marked "Amended," petitioner had not filed original returns for these periods.

For the calendar periods ended September 30, 1980, December 31, 1980, March 31, 1981, June 30, 1981, September 30, 1981, December 31, 1982, December 31, 1983, and December 31, 1984, respondent concedes that petitioner is entitled to treat all gifts made by petitioner as being made one-half by petitioner and one-half by petitioner's spouse in accordance with section 2513.

In the notice of deficiency, respondent determined that the non-interest-bearing demand loans made by petitioner to the Trusts resulted in taxable gifts. Respondent further determined that the value of each taxable gift is calculated by applying the following interest rates to the loan balances outstanding during each calendar year (simple interest):

| Taxable year | Interest rate |
|---|---|
| 1979 | 6.0% |
| 1980 | 11.5 |
| 1981 | 12.0 |
| 1982 | 10.6 |
| 1983 | 8.6 |
| 1984 | 9.9 |

These rates are set forth in Rev. Proc. 85-46, 1985-2 C.B. 507.

The statutory interest rates applicable to refunds and deficiencies of tax pursuant to section 6621 for the calendar years ending December 31, 1979, through December 31, 1984, are as follows:

| Period | Interest rate |
|---|---|
| Feb. 1, 1978—Jan. 31, 1980. | 6% |
| Feb. 1, 1980—Jan. 31, 1982. | 12 |
| Feb. 1, 1982—Dec. 31, 1982 | 20 |
| Jan. 1, 1983—June 30, 1983 | 16 |
| July 1, 1983—Dec. 31, 1984 | 11 |

The average annual rates of interest for three-month Treasury bills for the calendar years ending December 31, 1979 through December 31, 1983, used by the Treasury Department in developing Rev. Proc. 85-46, *supra,* are as follows:

| Year | Interest rate |
|------|---------------|
| 1979 | 10.041% |
| 1980 | 11.506 |
| 1981 | 14.029 |
| 1982 | 10.686 |
| 1983 | 8.63 |

Generally, the interest rate on a demand loan does not exceed the interest rate on a term loan that is identical in all other respects.

From January 1, 1980, through December 31, 1984, the trustees of the First Trust invested the proceeds of the non-interest-bearing loans at issue primarily in short-term tax-exempt investments. From March 13, 1980 (the date of formation of the Second Trust), through December 31, 1984, the trustees of the Second Trust invested the proceeds of the non-interest-bearing loans at issue primarily in short-term tax-exempt investments and tax-exempt money market funds. From June 3, 1983 (the date of formation of the 1983 Trust) through December 31, 1984, the trustees of the 1983 Trust invested the proceeds of the non-interest-bearing loans at issue primarily in short-term tax-exempt investments. The weighted average annual percentage returns realized by the First Trust, the Second Trust and the 1983 Trust during the periods at issue are as follows:

| First Trust | Return |
|-------------|--------|
| 1979 | 3.26% |
| 1/1/80—6/30/80* | 8.29 |
| Total | 5.76 |
| *Second Trust* | |
| 1980 | 4.69 |
| 1981 | 7.05 |
| 1982 | 7.20 |
| 1983 | 5.50 |
| 1/1/84—3/1/84* | 13.61 |
| Total | 6.45 |

*1983 Trust*

| | |
|---|---:|
| 1983 .............................................. | .84 |
| 1/1/84—3/1/84.................................... | 17.89 |
| Total......................................... | 5.63 |

*Date of repayment of all loans.

In determining the gift tax deficiencies for the periods involved here, respondent redetermined the total amount of taxable gifts for periods prior to the period at issue here. In this redetermination of prior gifts, respondent included an amount for the taxable gift attributable to non-interest-bearing demand loans made by petitioner prior to the period at issue here. Petitioner concedes that respondent's valuation of the prior period interest-free loans is consistent with his valuation of the interest-free loans for the periods before the Court.

The parties agree that in determining the value of the gifts petitioner made during the periods at issue here, the applicable interest rate the Court determines shall be applied to the average annualized loan amount of the loans made to the Trusts during the appropriate periods as follows:

| Period Calendar quarter ended: | First trust | Second trust | 1983 trust |
|---|---|---|---|
| 6/30/79 | $56,017 | - - - | - - - |
| 9/30/79 | 356,644 | - - - | - - - |
| 12/31/79 | 423,554 | - - - | - - - |
| 3/31/80 | 554,643 | $57,212 | - - - |
| 6/30/80 | 449,311 | 465,530 | - - - |
| 9/30/80 | - - - | 972,375 | - - - |
| 12/31/80 | - - - | 992,875 | - - - |
| 3/31/81 | - - - | 1,076,823 | - - - |
| 6/30/81 | - - - | 1,355,664 | - - - |
| 9/30/81 | - - - | 1,400,937 | - - - |
| 12/31/81 | - - - | 1,403,713 | - - - |
| *Year* | | | |
| 1982 | - - - | 7,004,174 | - - - |
| 1983 | - - - | 5,589,432 | $2,831,547 |
| 1984 | - - - | 322,276 | 1,116,170 |

The parties stipulated to the hypothetical rate of return which would have been realized on the loans at issue using the interest rates specified in sections 25.2512-5(e) and

25.2512-9(e), Gift Tax Regs. A summary of the parties' stipulation is as follows:

| First trust | Total loans | Applicable actuarial rate | Return (rate × loans) |
|---|---|---|---|
| 6/15/79—6/30/80 | $7,057,471 | 6% | $423,448 |
| *Second trust* | | | |
| 3/14/80—11/30/83 | 51,418,822 | 6% | 3,085,129 |
| 12/1/83—3/1/84 | 673,817 | 10 | 67,382 |
| *1983 trust* | | | |
| 6/6/83—11/30/83 | 5,879,234 | 6% | 352,754 |
| 12/1/83—3/1/84 | 4,003,465 | 10 | 400,346 |
| | 69,032,809 | | 4,329,059 |

Overall yield for all of the loans: 6.271%

The issue before us is how to value the gift that results from an interest-free demand loan.[3] Petitioner loaned money interest-free to trusts created for the benefit of family members. Petitioner loaned the funds to the trusts after the Seventh Circuit Court of Appeals held, in *Crown v. Commissioner,* 585 F.2d 234 (7th Cir. 1978), affg. 67 T.C. 1060 (1977), that no gift tax liability would result. After the Supreme Court reversed the *Crown* outcome, *Dickman v. Commissioner, supra,* petitioner filed gift tax returns on August 14, 1984, reporting the gifts for 1980 through 1983, and timely filed a gift tax return reporting the gifts for 1984. Petitioner valued the gifts relying on Rev. Rul. 73-61, 1973-1 C.B. 408. Respondent used the interest rates in Rev. Proc. 85-46 to determine the deficiencies against petitioner.

Petitioner argues that the appropriate rates are those found in section 25.2512-5 or 25.2512-9, Gift Tax Regs., as applicable to each taxable period pursuant to Rev. Rul. 73-61. Petitioner argues alternatively that the actual yields generated by the funds in the trust should determine the value of the gifts. In any event, petitioner contends that section 483 and the regulations thereunder provide an upper limit for the appropriate interest rate. Respondent contends that the interest rates in Rev. Proc. 85-46 are reasonable in

[3]Congress resolved the issue for interest-free and low-interest demand gift loans outstanding after June 6, 1984, unless the loan was repaid or the interest rate was modified before Sept. 17, 1984. Sec. 7872. All of the loans at issue in this case were repaid on Mar. 1, 1984, prior to the time the new rules were in effect.

light of the market interest rates and thus satisfy the *Dickman* requirement.

Interest-free demand loans result in taxable gifts of the reasonable value of the use of the money lent. *Dickman v. Commissioner*, 465 U.S. 330 (1984). Section 2501 imposes a tax on the transfer of property by gift. The tax applies whether the transfer is in trust or otherwise, direct or indirect. Sec. 2511(a). The amount of a gift of property is the fair market value of the property at the date of the gift. Sec. 2512(a); sec. 25.2512-1, Gift Tax Regs. The value of the interest-free loan is measured by the cost the donee would have incurred in borrowing the same funds.

*Dickman v. Commissioner, supra,* provides the starting point for determining the value of the gift. Prior to *Dickman,* respondent had attempted, unsuccessfully, to impose the gift tax on interest-free demand loans. See *Crown v. Commissioner,* 585 F.2d 234 (7th Cir. 1978), affg. 67 T.C. 1060 (1977); *Johnson v. United States,* 254 F. Supp. 73 (N.D. Tex. 1966). In *Dickman,* the Supreme Court held that interest-free demand loans result in "taxable gifts of the reasonable value of the use of the money lent." (Fn. ref. omitted.) *Dickman v. Commissioner, supra* at 344. The Court reasoned that the right to use money is a valuable right, "readily measurable by reference to current interest rates * * *." *Dickman v. Commissioner, supra* at 337. In *Dickman,* respondent had determined the value of the gift by utilizing the interest rates applicable to a deficiency pursuant to section 6621.

Valuation, however, was not at issue in the appeal before the Supreme Court. Following the Supreme Court's decision in *Dickman,* respondent issued a revenue procedure for determining the interest rate to value the gift resulting from an interest-free demand loan. Rev. Proc. 85-46, 1985-2 C.B. 507.[4] This revenue procedure sets the interest rate for valuation at the *lesser* of (1) the statutory interest rate for refunds and deficiencies in section 6621 or (2) the annual average rate for three-month Treasury bills. Respondent used the Rev. Proc. 85-46 rates to value the gifts in the present case.

---

[4]The revenue procedure restates the method described in Information Release IR 84-60, dated May 11, 1984.

The *Dickman* opinion alludes to use of a market rate of interest to value the loans. Three-month Treasury bills and the section 6621 rates both reflect market rates of interest for short-term loans. Treasury bills are auctioned and issued weekly on the public market. Section 6621 provides for an adjustable interest rate based on the prime rate in all of the years before us.

Petitioner argues that Rev. Proc. 85-46 can be justly ignored because Rev. Rul. 73-61 required taxpayers to use sections 25.2512-5 and 25.2512-9, Gift Tax Regs., in valuing the gift resulting from interest-free demand loans. Because petitioners used the rates required by Rev. Rul. 73-61, they argue respondent should not be permitted to apply a different and higher set of rates to their gifts retroactively.

Rev. Rul. 73-61 discusses the gift tax consequences to a parent who lent $250,000 interest-free to his son's wholly owned corporation, $200,000 payable on demand and $50,000 payable in ten years. The ruling concludes that the parent gave the use of the money to his son. Rev. Rul. 73-61, *supra* at 409. The 1973 ruling also states that the value of the term gift loan can be ascertained by accepted actuarial methods when the loan is made and is, therefore, subject to the gift tax at that time, citing section 25.2512-5, Gift Tax Regs. 1973-1 C.B. at 409. Section 25.2512-5, Gift Tax Regs., provides for actuarial valuation of annuities, life estates, terms for years, remainders, and reversions. With respect to the demand loan, however, the ruling states that the value of the gift was not ascertainable until the end of each calendar quarter during which the corporation had the use of the money. The valuation method for the demand loan was not specified in the ruling. The revenue ruling, therefore, provides no direct support for petitioner's argument.

Petitioner, however, points to the Supreme Court's acknowledgment that a demand loan, because of its inherently uncertain term, will bear a lesser interest rate than a term loan identical in other respects. *Dickman v. Commissioner,* 465 U.S. at 337. She argues, therefore, that a demand loan cannot bear a rate higher than the rate that respondent approved for the term loan in Rev. Rul. 73-61. Petitioner's

reliance on the interest rate utilized in Rev. Rul. 73-61 is, nevertheless, misplaced.

First, the interest rates prevailing in 1973 may well have been reflected by section 25.2512-5, Gift Tax Regs., but there is no doubt that, in the years before the Court, prevailing interest rates were much higher. Consequently, we can say that the regulation does not apply the market interest rate standard articulated by the Supreme Court in *Dickman*. Second, respondent applies in this case the lesser of Treasury bill rates or section 6621 rates. As a result, the interest rates applied by respondent in this case are comparable, if not identical, to the rates respondent used in *Dickman* which were not criticized by the Supreme Court. Finally, because the rates that respondent utilizes in valuing the gifts in this case are market rates extant while the loans were outstanding, there is no "retroactive" application of unforeseeable interest rates to petitioner's prejudice.

Respondent's "lesser of" three-month Treasury bills and section 6621 rates standard allows taxpayers to use a relatively low interest rate to compute gift values. The U.S. Government is the debtor with the lowest credit risk; its interest rates, therefore, should be lower than other market interest rates payable by other debtors whose credit worthiness is not so firm as that of the United States. See *Goldstein v. Commissioner,* 89 T.C. 535 (1987). It is highly improbable that a donee of an interest-free demand gift loan could borrow the funds at a lower interest rate than the one payable by the United States. Respondent, therefore, has selected a fair method of determining the reasonable value of the gifts that result from interest-free demand loans. Rev. Proc. 85-46 is based on a readily ascertainable yield on funds and provides a reliable method to determine the reasonable value of the use of the funds. In short, it satisfies the standards of valuation anticipated in *Dickman v. Commissioner, supra* at 344 n. 14.

Petitioner also argues that the actual yield of the loan proceeds is the proper measure of the gift if section 25.2512-5, Gift Tax Regs., does not apply. The issue, however, is not what the donee of an interest-free loan could have made if it invested the funds. On this point of

valuation, the Supreme Court commented that "the Commissioner need not establish that the funds lent did in fact produce a particular amount of revenue; it is sufficient for the Commissioner to establish that a certain yield could readily be secured and that the reasonable value of the use of the funds can be reliably ascertained." *Dickman v. Commissioner, supra* at 344 n. 14. The cost of the use of the funds (i.e., market interest rate), which is the measure of the value of the gift, does not depend on the soundness of the debtor's use of the loan proceeds. A lender does not usually reduce the rate of interest because the debtor experiences a relatively low rate of return on investing the proceeds. The relevant inquiry is at what interest rate the donee could have borrowed the funds. See *Dickman v. Commissioner, supra* at 335 and n. 5. Petitioner's argument, therefore, fails.

Petitioner also contends that, in any event, the interest rates in section 483 provide a cap on the interest rate respondent may impute for gift tax purposes, based on the Seventh Circuit's decision in *Ballard v. Commissioner,* 854 F.2d 185 (7th Cir. 1988), revg. a Memorandum Opinion of this Court.[5] Respondent argues that section 483 is irrelevant because this case does not involve a sale or exchange of property.

Section 483[6] generally provided in the years at issue that

---

[5]T.C. Memo. 1987-128.

[6]Sec. 483 provides, in pertinent part:

SEC. 483. INTEREST ON CERTAIN DEFERRED PAYMENTS.

(a) AMOUNT CONSTITUTING INTEREST.—For purposes of this title, in the case of any contract for the sale or exchange of property there shall be treated as interest that part of a payment to which this section applies which bears the same ratio to the amount of such payment as the total unstated interest under such contract bears to the total of the payments to which this section applies which are due under such contract.

(b) TOTAL UNSTATED INTEREST.—For purposes of this section, the term "total unstated interest" means, with respect to a contract for the sale or exchange of property, an amount equal to the excess of—

    (1) the sum of the payments to which this section applies which are due under the contract, over

    (2) the sum of the present values of such payments and the present values of any interest payments due under the contract.

For purposes of paragraph (2), the present value of a payment shall be determined, as of the date of the sale or exchange, by discounting such payment at the rate, and in the manner, provided in regulations prescribed by the Secretary. Such regulations shall provide for discounting on the basis of 6-month brackets and shall provide that the present value of any interest payment due not more than 6 months after the date of the sale or exchange is an amount equal to 100 percent of such payment.

(c) PAYMENTS TO WHICH SECTION APPLIES—

interest would be imputed in installment sales contracts at an "unstated interest" rate if the contract did not provide for a "safe harbor" test rate of interest. The "safe harbor" test rates during the periods at issue were 6-percent simple interest until June, 30, 1981, and 9-percent simple interest thereafter. Sec. 1.483-1(d)(1)(ii), Income Tax Regs. The unstated interest rates during the periods at issue were 7 percent compounded semiannually through June 30, 1981, and 10 percent compounded semiannually thereafter. Sec. 1.483-1(c)(2)(ii), Income Tax Regs.

The Seventh Circuit Court of Appeals, to which an appeal would lie in this case, recently considered section 483 in a gift tax context in *Ballard v. Commissioner, supra.* In *Ballard,* the taxpayer sold property to her children for a price less than fair market value on the installment method at a 6-percent interest rate. The taxpayer reported the difference between fair market value and the purchase price as a gift. The Commissioner determined that the 6-percent interest rate on the purchase price gave rise to an additional gift. He determined a deficiency in gift tax using an 18-percent market rate of interest to discount the purchase price even though the contract provided for interest at 6 percent, the section 483 "safe harbor rate."

This Court held that the section 483 "safe harbor" interest rate could not be relied on for gift tax valuation purposes. The Seventh Circuit reversed and held that section 483 applies to the gift tax provisions of the Code as well as to the income tax provisions. *Ballard v. Commissioner, supra* at 188. The court based its holding on the introductory language of section 483 which states that section 483 applies, "for purposes of this title," i.e., to all provisions of the Code. The court reasoned that,

---

(1) IN GENERAL.—Except as provided in subsection (f), this section shall apply to any payment on account of the sale or exchange of property which constitutes part or all of the sales price and which is due more than 6 months after the date of such sale or exchange under a contract—

　(A) under which some or all of the payments are due more than one year after the date of such sale or exchange, and

　(B) under which, using a rate provided by regulations prescribed by the Secretary for purposes of this subparagraph, there is total unstated interest.

Any rate prescribed for determining whether there is total unstated interest for purposes of subparagraph (B) shall be at least one percentage point lower than the rate prescribed for purposes of subsection (b)(2).

although valuation of property, for purposes of gift taxes, is not directly related to the imputation of taxes on installment contracts for purposes of income taxation; a taxpayer who complies with Sec. 483 and charges a "safe harbor" rate of interest on an installment sales contract, should not be penalized if the "safe harbor" rate of interest is below the market rate of interest for purposes of gift tax valuation.

*Ballard v. Commissioner, supra* at 187.

The taxpayer in *Ballard* sold property on the installment method. Section 483, therefore, applied by its terms to the taxpayer in *Ballard*. The *Ballard* court held that when a taxpayer complies with the section 483 safe harbor rules in an installment sale, respondent cannot impute a higher market rate of interest to find a gift. The section 483 safe harbor protects taxpayers who sell property using the installment method for purposes of the gift tax as well as the income tax.

Section 483 by its terms, however, does not apply to transactions other than contracts for the sale or exchange of property. We look, therefore, to the purpose of section 483 to determine what effect it might have on transactions other than installment sales. Section 483 was designed by Congress to prevent sellers from converting ordinary income into capital gain by agreeing to deferred payment of the purchase price without stating how much of the deferred payments constituted interest. H. Rept. 749, 88th Cong., 1st Sess. (1963), 1964-1 C.B. (Part 2) 196. In the same transaction, buyers of depreciable property were able to depreciate the acquired property using an inflated basis. Section 483 was designed to provide a basis rule for installment sales by recharacterizing part of the stated principal payments as interest. The purposes underlying section 483 had nothing to do with valuation. In promulgating regulations that established "safe-harbor" and "imputed" interest rates, the Treasury Department did not peg the rates to any market interest rate. We conclude that section 483 does not provide appropriate interest rates under the *Dickman* standard for use in valuing the gift resulting from an interest-free demand loan.

Like section 483, section 482 also provides an imputed interest rate. We consider section 482 because, unlike section 483, it provides a rule specifically for imputing

interest rates on interest-free demand loans in transactions between certain related taxpayers.

In general, section 482[7] provides for the allocation of income and deductions among taxpayers. The purpose of section 482 is to place transactions of controlled taxpayers dealing with each other on a tax parity commensurate with the dealings between uncontrolled taxpayers dealing at arm's length. Sec. 1.482-1(b)(1), Income Tax Regs. The section 482 regulations require an arm's-length interest rate to be imputed if a taxpayer loans money to a controlled taxpayer in a business setting and charges no interest. Sec. 1.482-2(a)(1), Income Tax Regs. The regulations provide a safe harbor interest rate that taxpayers may use to avoid imputation of interest on loans between controlled taxpayers.

During the period at issue prior to July 1, 1981, the safe harbor rate was between 6 and 8 percent per annum simple interest. Sec. 1.482-2(a)(2)(iv), Income Tax Regs. For the remaining period at issue, the safe harbor rate was between 11 and 13 percent per annum simple interest. Sec. 1.482-2(a)(2)(iii), Income Tax Regs. These safe harbor rates applied to interest-free loans unless the taxpayer established a more appropriate rate under the circumstances.

The section 482 rates were changed occasionally to reflect market interest rates. The rate changes during the periods at issue, however, lagged considerably behind actual market changes.[8] *Dickman* requires us to measure the economic value associated with the use of the money; this value is "readily measurable by reference to current interest rates." *Dickman v. Commissioner, supra* at 337. The regulations, which did not provide current interest rates, therefore, do not provide an appropriate rate to determine value for gift tax purposes. Moreover, we note, the rates chosen adminis-

---

[7]SEC. 482. ALLOCATION OF INCOME AND DEDUCTIONS AMONG TAXPAYERS.

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

[8]TRA 1984, in sec. 44(b)(2) of Pub. L. 98-369, 98 Stat. 559, 1984-3 C.B. (Vol. 1) 67, provided for modification of the sec. 482 safe harbor rates by using the applicable Federalrate pursuant to sec. 1274 (d).

tratively by respondent in Rev. Proc. 85-46 and applied in this case are more beneficial to petitioner than the section 482 rates for the years at issue.

Petitioner also argues that the rates chosen by respondent in Rev. Proc. 85-46 are not theoretically correct and, consequently, that we should disregard them. Petitioner points out that any interest chargeable to the trusts on their loans would have turned on many factors, including the loan mix of the lender, availability and cost of funds to the lender, prevailing interest rates locally, local economic conditions, the credit status and history of the debtor, the debtor's reputation in the community, etc.—i.e., all the variables that go into a financial institution's decision on what to charge for lending money to a specific borrower on a given day. While respondent's approach may not have been theoretically pure, we commend respondent for promulgating easily administrable, readily ascertainable, comprehensible standards that, in our view, seem generous in their application to petitioner.

*Decision will be entered for the respondent.*

