ESTATE OF ANDERSON ARBURY, DECEASED, DOROTHY D. ARBURY, INDEPENDENT PERSONAL REPRESENTATIVE, ET AL.,[1] PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 8683-87, 8684-87,   Filed July 31, 1989.
39312-87, 39313-87.

---

[1]Cases of the following petitioners are consolidated herewith: Dorothy D. Arbury, docket Nos. 8684-87, 39312-87; Estate of Anderson Arbury, Deceased, Dorothy D. Arbury, Independent Personal Representative, docket No. 39313-87.

*John E. Riecker,* for the petitioners.
*Stewart T. Hittinger,* for the respondent.

OPINION

RUWE, *Judge:* Respondent determined deficiencies in petitioners' liability for Federal gift tax as follows:

| Petitioner | Taxable period ending | Deficiency |
| --- | --- | --- |
| Estate of Anderson Arbury docket No. 39313-87 | Mar. 31, 1981 | $16,932.33 |
| | June 30, 1981 | 17,077.27 |
| | Sept. 30, 1981 | 17,357.22 |
| Estate of Anderson Arbury docket No. 8683-87 | Dec. 31, 1981 | 69,068.61 |
| | Dec. 31, 1982 | 49,296.93 |
| | Dec. 31, 1983 | [2]19,519.60 |
| | Dec. 31, 1984 | 22,877.84 |
| Dorothy D. Arbury docket No. 39312-87 | Mar. 31, 1981 | 16,932.33 |
| | June 30, 1981 | 17,077.27 |
| | Sept. 30, 1981 | 17,357.22 |
| Dorothy D. Arbury docket No. 8684-87 | Dec. 31, 1981 | 69,068.05 |
| | Dec. 31, 1982 | 49,296.53 |
| | Dec. 31, 1983 | 19,570.60 |
| | Dec. 31, 1984 | 22,876.83 |

This case was submitted fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference.

The only issue remaining for decision is the proper valuation of the gift element of a series of interest-free demand loans made to the children of Dorothy D. and Anderson Arbury.

Anderson Arbury (decedent), a resident of Michigan, died on May 16, 1986, at the age of 81. Petitioner Dorothy D. Arbury, who is the decedent's surviving spouse and the independent personal representative of the decedent's estate, resided in Midland, Michigan, at the time the petitions in these cases were filed. For convenience, we refer to Dorothy D. Arbury as petitioner and to the Estate of Anderson Arbury (the other petitioner) as "estate."

Both petitioner and decedent timely filed United States Gift Tax Returns, Forms 709, for the periods ending December 31, 1981, December 31, 1982, December 31, 1983,

---

[2]Respondent claims that the actual deficiency is $19,568.15. Respondent has stipulated, however, that he does not intend to request an increase in the deficiency for this period from the amount shown in the notice of deficiency.

and December 31, 1984. Valid elections have been made pursuant to section 2513[3] to treat gifts by either spouse as though each spouse made a gift of one-half of the donated amount.

Robin A. Arbury and Margaret A. Bergtold are the adult children of Dorothy and Anderson Arbury. As of January 1, 1981, petitioner had loaned $2,971,500 to Robin and $952,500 to Margaret to be used in their respective farm and ranch businesses. These loans were evidenced by a series of written demand notes and were given free of interest.

On September 18, 1981, petitioner loaned Margaret an additional $78,000 free of interest. On June 14, 1982, Margaret borrowed an additional $65,000 from petitioner, also without interest. On July 8, 1983, petitioner loaned Margaret an additional $20,000. This loan was also made free of interest and increased Margaret's total indebtedness to $1,115,500. Neither Robin nor Margaret ever repaid any of the principal borrowed nor did they ever tender or make any interest payments.

The gift tax returns filed by petitioner for the periods ending December 31, 1981, December 31, 1982, and December 31, 1983, report various gifts to members of her family. In accordance with the provisions of section 2513, similar returns were filed by the decedent. These reported gifts are unrelated to the interest-free loans in issue.

In July 1984, following publication of the Supreme Court's decision in *Dickman v. Commissioner*, 465 U.S. 330 (1984), petitioner and decedent filed amended Federal gift tax returns for the taxable periods ending December 31, 1981, December 31, 1982, and December 31, 1983. The amended returns reported as taxable gifts the amount of interest that would have been payable on the outstanding interest-free loan amounts if the loans from petitioner to her children had been made subject to a 7-percent per annum interest rate. Petitioner and decedent selected this rate of interest because Michigan usury laws limited the amount of interest payable on loans between individuals to a rate of

---

[3]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and as in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

interest not in excess of 7 percent per annum. Mich. Stat. Ann. sec. 19.15(1) (Callaghan 1981). The amended returns were filed without any prior notice of deficiency from respondent and the gift tax computed on the returns was paid with the amended returns.

On August 22, 1984, petitioner forgave the full principal balances of the interest-free loans. On the gift tax returns filed for the period ending December 31, 1984, petitioner and decedent reported as taxable gifts the transfer of $2,971,500 to Robin and $1,105,500[4] to Margaret. The 1984 gift tax returns also reflected the transfer of the purported value of the interest-free loans computed from January 1, 1984, through August 22, 1984, using the same 7-percent interest rate, as well as numerous transfers to other individuals.

Respondent subsequently conducted an examination of petitioner's and decedent's gift tax returns and determined that there were computational errors, errors in reporting all of the transfers, and an error in the valuation of the gifts represented by the interest-free loans. In addition, respondent determined that quarterly gift tax returns were also due for the periods ending March 31, 1981, June 30, 1981, and September 30, 1981.[5]

Petitioner and decedent executed Waivers of Restrictions on Assessment and Collection, Forms 890, on August 21, 1985, to reflect the determinations to which they agreed. These waivers reflected adjustments to the original and amended gift tax returns for the periods ending December 31, 1981, December 31, 1982, and December 31, 1983, for both petitioner and decedent.

Petitioner and the estate executed additional Waivers of Restrictions on Assessment and Collection on November 18, 1987, to reflect further determinations made by respondent to which they agreed. These forms were designed to reflect the changes made by the quarterly filing requirements for

---

[4]This figure is incorrectly reported on the return. The correct figure should be $1,115,500.

[5]Sec. 6075(b), prior to amendment by the Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 442(d)(3), 95 Stat. 172, 322, required the filing of gift tax returns on a quarterly basis only when the sum of (1) the taxable gifts made during the calendar quarter plus (2) all other taxable gifts made during the calendar year (and for which a return had not yet been required) exceeded $25,000. With two minor exceptions not relevant here, sec. 6075(b) now requires the filing of yearly gift tax returns for gifts made after Dec. 31, 1981.

the transfers made in 1981. Other minor computational adjustments were also contained in this set of waivers.

The parties are in agreement that all of the adjustments reflected by the computations supporting the figures on the Forms 890 are correct except for the valuation of the gifts due to the interest-free loans. The only issue left to resolve, therefore, is the value of the gift element of the interest-free demand loans made between petitioner and her two children.

The basic issue presented by the parties is whether the value of the gift element of the interest-free loans is limited to the amount of interest which could legally be charged in the State of Michigan. Generally speaking, the legal limit on interest that could be charged on a loan between individuals was 7 percent during the relevant time period. Mich. Stat. Ann. sec. 19.15(1) (Callaghan 1981). The parties stipulated that if the value of the gifts is not to be based upon a 7-percent rate pursuant to the State of Michigan usury statutes, then the rates as prescribed by Rev. Proc. 85-46, 1985-2 C.B. 507, 509, are an accurate reflection of the current interest rates applicable and should be used in determining the value of the gifts.[6] No other facts regarding the value of the gift element of the interest-free loans were presented.

In *Dickman v. Commissioner,* 465 U.S. 330, 344 (1984), the Supreme Court held that intrafamily interest-free demand loans result in "taxable gifts of the reasonable value of the use of the money lent." The Court noted that the question of the "value" of the use of the money loaned was not before it, but stated "that to support a gift tax on the transfer of the use of [money or property] * * * it is sufficient for the Commissioner to establish that a certain yield could readily be secured and that the reasonable value of the use of the funds can be reliably ascertained." *Dickman v. Commissioner, supra* at 344 n. 14.

Following the decision in *Dickman,* the Internal Revenue Service issued Rev. Proc. 85-46, 1985-2 C.B. 507, setting

---

[6]The rates reflected in Rev. Proc. 85-46, 1985-2 C.B. 507, 509 are:

| All four quarters of | 1981 | 12.0% |
| Calendar year | 1982 | 10.6% |
| Calendar year | 1983 | 8.6% |
| Calendar year | 1984 | 9.9% |

forth valuation and reporting procedures with respect to taxable gifts resulting from interest-free and low-interest (below-market) demand loans. The revenue procedure applies to low-interest and interest-free demand loans outstanding before June 7, 1984, and to those loans outstanding after June 6, 1984, that are repaid or modified before September 17, 1984. For purposes of valuation, the revenue procedure uses interest rates based upon the lesser of the statutory rate for refunds and deficiencies or the annual average rate for 13-week Treasury bills. Rev. Proc. 85-46, 1985-2 C.B. 507, 508. We have recently held that this is a fair and reliable method for determining the reasonable value of gifts resulting from interest-free demand loans. *Cohen v. Commissioner,* 92 T.C. 1039 (1989).

Petitioners argue that the "reasonable value of the use of the money lent" must be determined by reference to State usury statutes which set 7 percent as the maximum lawful amount of interest that may be charged on loans between private individuals such as petitioner and her children. Petitioners contend that a contrary result is inconceivable in that the U.S. Supreme Court could not have intended to recharacterize non-interest bearing loans in a way that would violate State usury laws and make "implicit state law violators of [so] many taxpayers."

First we observe that petitioner did not charge interest on these loans. Instead, she made a gift of the economic value of the use of the transferred funds. Imposition of the Federal gift tax, based upon the true value of the property actually transferred, is not the same as actually charging interest to the borrower at a rate in excess of that allowed by the State. The fact that the value of the use of the money can be *measured* by reference to prevailing interest rates, see *Dickman v. Commissioner, supra* at 344 n. 14, does not mean that imposition of the gift tax requires recharacterization of the transaction as one in which interest was charged and then given away. It was the Government's theory in *Dickman* that the economic effect of an interest-free loan was the same as charging interest and then giving that interest to the borrower. *Dickman v. Commissioner, supra* at 335 n. 5. The Supreme Court, however, viewed the use of the money as the transferred

property to be valued and did not base its opinion on a recharacterization of what actually occurred. *Dickman v. Commissioner, supra.*[7] There is no implicit violation of State law in making an interest-free loan nor does the imposition of the Federal gift tax on the true value of the transferred property conflict with State law.

Section 2501(a)(1) imposes the gift tax "on the transfer of property by gift." The value of a gift is defined as "the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell, and both having reasonable knowledge of relevant facts." Sec. 25.2512-1, Gift Tax Regs. In the case of an interest-free demand loan, the right to use the money is considered "property" that comes within the scope of the gift tax statute. *Dickman v. Commissioner, supra* at 335-336. The gift tax is imposed upon the reasonable value of the use of the money lent. *Dickman v. Commissioner, supra* at 335. The proper valuation of the gift element of an interest-free demand loan, therefore, does not depend on how much interest the lender can legally extract from a particular borrower, but is determined based on the reasonable value of the use of the borrowed funds. In determining this value, "it is sufficient for the Commissioner to establish that a certain yield could readily be secured and that the reasonable value of the use of the funds can be reliably ascertained." *Dickman v. Commissioner, supra* at 344 n. 14.

The fact that the loans in issue were made between specific individuals or family members does not control the method to be used in determining their value for gift tax purposes. Section 25.2512-1, Gift Tax Regs., quoted in pertinent part above, is explicitly clear in providing that property is to be valued under an objective test applying the willing buyer-willing seller test. The willing buyer and seller, for valuation purposes, are hypothetical buyers and sellers. See *Propstra v. United States,* 680 F.2d 1248,

---

[7]Sec. 7872, which was enacted subsequent to *Dickman v. Commissioner,* 465 U.S. 330 (1984), does, for Federal tax purposes only, treat interest-free loans as if interest had been paid to the lender and then transferred back to the borrower. Sec. 7872 provides a method for determining the incidents of taxation. It does not alter the rights and responsibilities of the parties with respect to the loan itself. As discussed *infra* at pages 144-145, sec. 7872 does not apply to this case.

1251-1252 (9th Cir. 1982); *Estate of Bright v. United States,* 658 F.2d 999, 1001 (5th Cir. 1981); *Minahan v. Commissioner,* 88 T.C. 492, 499 (1987); *Estate of Andrews v. Commissioner,* 79 T.C. 938, 954-956 (1982).

Merely because State law sets a rate of interest that a lender can legally charge to a particular type of borrower under certain circumstances does not necessarily mean that those rates reflect the economic value of the use of the borrowed funds. Would a hypothetical lender loan money to a hypothetical borrower at 7-percent interest when he could get 12 percent on short-term Treasury bills? Indeed, petitioners have not claimed that the interest rates set forth in the Michigan usury statute reflect the interest rates at which the money would be lent between a hypothetical willing lender and borrower. The parties have stipulated that the rates set forth in Rev. Proc. 85-46, 1985-2 C.B. 507, accurately reflect current interest rates for the years in issue.

Petitioners argue that had a lender intended to charge interest on the loans, the lender would have been legally limited to charging 7 percent and that it would be unreasonable to impose a gift tax on the differential between the maximum rate allowed by State law and the rates prescribed in Rev. Proc. 85-46. Petitioners also argue that respondent's valuation method violates the uniformity clause of article I, section 8, of the Constitution because application of the valuation procedure contained in Rev. Proc. 85-46 results in unequal treatment of taxpayers situated in different States. Petitioners contend that respondent's valuation method unfairly benefits taxpayers residing in States without usury statutes because those taxpayers can legally charge market rates of interest and avoid any gift tax liability.

We need not decide whether the gift tax would have applied to the differential between 7 percent and the rates contained in Rev. Proc. 85-46 had petitioner actually intended to charge a market rate of interest and been prevented by State law from doing so. In this case petitioner obviously intended to benefit her children by charging *no* interest. The State usury laws would not become a factor unless petitioner had intended to lend

money to her children at market rates and been prevented from doing so by State law. For the same reason, we find it unnecessary to decide the constitutional issue presented by petitioners. It would be inappropriate to decide a constitutional question based upon hypothetical scenarios and problems not presented by the facts in this case. *Anniston Mfg. Co. v. Davis,* 301 U.S. 337, 353 (1937); *Tennessee Publishing Co. v. American National Bank,* 299 U.S. 18, 22 (1936); *Tennessee Consolidated Coal Co. v. Commissioner,* 117 F.2d 452, 454-455 (6th Cir. 1941). We note, however, that disparities in Federal taxes paid by taxpayers in different States, caused by variations in the laws of the several States, have been held to have no adverse effect on the constitutionality of the Federal estate tax.

Congress cannot accommodate its legislation to the conflicting or dissimilar laws of the several states nor control the diverse conditions to be found in the various states which necessarily work unlike results from the enforcement of the same tax. All that the Constitution (Art. I, sec. 8, cl. 1) requires is that the law shall be uniform in the sense that by its provisions the rule of liability shall be the same in all parts of the United States. [*Florida v. Mellon,* 273 U.S. 12, 17 (1927).]

Finally, in their reply brief, petitioners contend that for purposes of section 7872 the applicable interest rate for valuing the gift element of interest-free demand loans outstanding before January 1, 1985, is 10 percent. Based on this assertion, petitioners argue that a rate of 10 percent should apply to all of the loans in issue. Petitioners' argument misses the mark for two reasons. First, none of the loans involved herein are governed by section 7872. Only below-market loans outstanding after June 6, 1984, that are not repaid before September 17, 1984, are governed by section 7872. *Cohen v. Commissioner,* 92 T.C. at 1045 n. 3; see *Ballard v. Commissioner,* T.C. Memo. 1987-128, revd. on other grounds 854 F.2d 185 (7th Cir. 1988). A below-market loan is considered repaid, and hence outside the scope of section 7872, if it is repaid, cancelled, forgiven, or otherwise retired before September 17, 1984. See sec. 1.7872-1(b)(2), Proposed Income Tax Regs., 50 Fed. Reg. 33553 (August 20, 1985). Because petitioner relieved her children of any obligation to repay these loans on August 22, 1984, section 7872 is inapplicable to the loans here in

issue. Second, for loans actually governed by section 7872, the 10-percent rate of interest is used only to compute the value of gifts for each day in 1984 after June 6 that the loan is outstanding. Rev. Proc. 85-46, 1985-2 C.B. 507, 508.

*Decision will be entered under Rule 155.*