112 T.C. No. 6

UNITED STATES TAX COURT

GIDEON L. MEDINA AND CORAZON P. MEDINA, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18999-97.                    Filed February 22, 1999.

H and W, who were both disqualified persons within
the meaning of sec. 4975, I.R.C., borrowed $340,000
from the qualified pension plan of H's wholly owned
corporation.  H and W did not make any payments of
interest or principal relating to the loan and did not
file excise tax returns.
        1.  Held:  Sec. 4975, I.R.C., applies to a loan,
even though such loan, pursuant to sec. 72(p), I.R.C.,
was treated as a distribution.
        2.  Held, further, H and W did not correct, within
the meaning of sec. 4975, I.R.C., the prohibited
transaction and, pursuant to sec. 4975(a) and (b),
I.R.C., are liable for both tiers of excise taxes.
        3.  Held, further, the "amount involved", on which
the sec. 4975 excise taxes are based, is equal to the
greater of interest paid or fair market interest
relating to the loan.  Because H and W did not make any
payments of interest, the amount involved is the fair
market interest.

4.  Held, further, in determining the amount involved, the fair market interest rate is 10.5 percent.

5.  Held, further, H and W, pursuant to sec. 6651(a)(1), I.R.C., are liable for additions to tax for failing to file excise tax returns.


Michael E. Dumke, for petitioners.

Mark L. Hulse and Roberta M. Amos, for respondent.


OPINION

FOLEY, Judge:  By notices dated June 25, 1997, respondent determined deficiencies in, and an addition to, petitioners' Federal excise taxes as follows:

Gideon L. Medina

|  | Excise Taxes | | Addition to Tax |
| Year | Sec. 4975(a) | Sec. 4975(b) | Sec. 6651(a)(1) |
| --- | --- | --- | --- |
| 1991 | $2,685 | -- | $671 |
| 1992 | 5,652 | -- | 1,413 |
| 1993 | 8,930 | -- | 2,233 |
| 1994 | 12,553 | -- | 3,138 |
| 1995 | 16,556 | -- | 4,139 |
| 1996 | 20,979 | -- | -- |
| 1997[1] | -- | $468,469 | -- |

[1] For the taxable period ending June 30, 1997.

Corazon P. Medina

|  | Excise Taxes | | Addition to Tax |
| Year | Sec. 4975(a) | Sec. 4975(b) | Sec. 6651(a)(1) |
| --- | --- | --- | --- |
| 1992 | $2,967 | -- | $742 |
| 1993 | 6,245 | -- | 1,561 |
| 1994 | 9,868 | -- | 2,467 |
| 1995 | 13,871 | -- | 3,468 |
| 1996 | 18,294 | -- | -- |
| 1997[1] | -- | $414,769 | -- |

[1] For the taxable period ending June 30, 1997.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are as follows:

1. Does section 4975 apply to a loan even though such loan, pursuant to section 72(p), was treated as a distribution? We hold that it does.

2. Did petitioners, within the meaning of section 4975(f)(5), correct the prohibited transaction? We hold that they did not.

3. What is the "amount involved" relating to a loan that is subject to section 4975 excise taxes? We hold that the "amount involved" is the greater of the interest paid or the fair market interest.

4. In determining the "amount involved" relating to petitioners' loan, what is the fair market interest rate? We hold that the fair market interest rate is 10.5 percent.

5. Are petitioners, pursuant to section 6651(a), liable for additions to tax for failing to file excise tax returns? We hold that they are.

## Background

The parties submitted this case fully stipulated pursuant to Rule 122. At the time the petition was filed, petitioners resided in Niles, Michigan.

Gideon Medina was an employee, the sole shareholder, and president of Gideon L. Medina, M.D., P.C., a Michigan professional corporation (corporation). Corazon Medina was secretary of the corporation. The corporation established a qualified employees' pension plan and trust (plan), which met the requirements of section 401. During the years in issue, petitioners were participants in the plan.

On December 1, 1986, petitioners borrowed $340,000 (loan) from the plan to acquire Sunshine Villa Apartments. Petitioners executed a promissory note with the following terms: (1) Interest at the rate of 10.5 percent per annum is payable annually; (2) any unpaid interest is added to the principal amount; and (3) the entire principal amount is due 8 years from the date of the note or, if sooner, upon the sale of Sunshine Villa Apartments. On August 15, 1991, Mr. Medina executed a document providing that "Building C of Sunshine Villa Apartments * * * [is] assigned to * * * [the plan]. * * * to ensure that the loan is paid if and when the Sunshine Villa is sold." Petitioners did not file Form 5330, Return of Excise Taxes Related to Employee Benefit Plans, for any of the years in issue, nor did they make any payments to the plan pursuant to the terms of the promissory note.

## Discussion

Section 4975 imposes two tiers of excise taxes on a prohibited transaction. The first tier is 5 percent of the "amount involved" relating to a prohibited transaction for each year, or part thereof, in the "taxable period". Sec. 4975(a). If the first-tier excise tax applies and the transaction is not corrected within the "taxable period", a 100-percent second-tier tax is imposed on the "amount involved" relating to the prohibited transaction. Sec. 4975(b).

I.   Application of Section 4975 to a Loan Subject to Section 72(p)

The lending of money between a plan and a disqualified person generally is a prohibited transaction. See sec. 4975(c)(1)(B). Respondent determined that petitioners are disqualified persons who participated in a prohibited transaction (i.e., the loan) and, thus, are liable for section 4975 excise taxes. Petitioners do not contest respondent's contention that petitioners are disqualified persons. Petitioners contend, however, that they did not participate in a prohibited transaction during the years in issue (i.e., 1991 through 1997) because, pursuant to section 72(p), the loan was a taxable distribution in an earlier year (i.e., 1986). As a result, petitioners contend, section 4975 excise taxes are not applicable. Respondent contends that the loan was subject to

section 4975 during the years in issue even though the loan, pursuant to section 72(p), was treated as a distribution in an earlier year.

To resolve this issue, we need not look beyond the plain and ordinary meaning of the words used in section 72(p).  See United States v. Locke, 471 U.S. 84, 93 (1985); Phillips Petroleum Co. v. Commissioner, 101 T.C. 78, 97 (1993).  Section 72(p)(1)(A) provides that a loan from a qualified employer plan to a plan participant "shall be treated as having been received by such individual as a distribution under such plan."  The loan is "treated" as a distribution only for purposes of section 72, which determines the amount of a distribution subject to income tax.  See sec. 72(p).  The characterization of the loan for section 72 purposes does not change its inherent character for section 4975 excise tax purposes.  Accordingly, section 4975 may apply to a loan even though such loan, pursuant to section 72(p), was treated as a distribution.  Section 4975 is applicable to petitioners' loan transaction.

## II.  Correction of the Prohibited Transaction

Petitioners contend, in the alternative, that they are not liable for section 4975 excise taxes because they "corrected" the prohibited transaction on August 15, 1991, the date Mr. Medina executed the document that assigned to the plan the proceeds from a future sale of Sunshine Villa Apartments.  Respondent contends

that the prohibited transaction was not "corrected" within the meaning of section 4975.

Disqualified persons are subject to the first-tier excise tax only for years, or portions of years, within the "taxable period."  Sec. 4975(a).  The second-tier excise tax does not apply if the prohibited transaction was corrected within the "taxable period".  Sec. 4975(b).  The "taxable period" is the period beginning on the date the prohibited transaction occurs (i.e., December 1, 1986) and ending on the earliest of three dates:  (1) The date of mailing the notice of deficiency (i.e., June 25, 1997); (2) the date on which the section 4975(a) excise tax is assessed (no assessment has been made); or (3) the date on which correction of the prohibited transaction is completed.  Sec. 4975(f)(2).

A prohibited transaction is corrected by "undoing the transaction to the extent possible, but in any case placing the plan in a financial position not worse than that in which it would be if the disqualified person were acting under the highest fiduciary standards."  Sec. 4975(f)(5).  Where the prohibited transaction is the lending of money, the disqualified person corrects the transaction by repaying the principal plus reasonable interest.  See Kadivar v. Commissioner, T.C. Memo. 1989-404; sec. 53.4941(e)-1(c)(4), Foundation Excise Tax Regs. Mr. Medina's assignment to the plan of future sales proceeds did

not result in the repayment of principal or interest.  Therefore, petitioners did not correct the prohibited transaction, and the taxable period ended on June 25, 1997, the date respondent mailed the notice of deficiency.  Accordingly, petitioners are liable for both tiers of section 4975 excise taxes.

III.  Amount Involved

Section 4975 excise taxes are imposed on the "amount involved" relating to the prohibited transaction.  Sec. 4975(a) and (b).  This section states that the "amount involved" is the "greater of the amount of money and the fair market value of the other property given or the amount of money and the fair market value of the other property received".  Sec. 4975(f)(4).  Where the use of money is involved (i.e., a loan), the regulations define the "amount involved" as the "greater of the amount paid for such use or the fair market value of such use".  Sec. 53.4941(e)-1(b)(2)(ii), Foundation Excise Tax Regs.; see also id. subpar. (4), Example (2).  See generally sec. 141.4975-13, Temporary Excise Tax Regs., 41 Fed. Reg. 32890 (Aug. 5, 1976) and 51 Fed. Reg. 16305 (May 2, 1986) (providing that the Foundation Excise Tax Regulations define the term "amount involved" for purposes of section 4975 until permanent regulations under section 4975 are promulgated).

Petitioners contend that the "amount involved" relating to a loan is the greater of the interest paid or the fair market

interest.  Respondent contends that the amount involved is the greater of the "interest actually charged" (i.e., the 10.5-percent stated interest rate) or the fair market interest. Respondent relies on Thoburn v. Commissioner, 95 T.C. 132, 139 (1990), and Janpol v. Commissioner, 101 T.C. 518, 529 (1993), as support for this contention.  In Thoburn, the Court paraphrased the regulations' "amount paid" language as "interest actually charged".  See Thoburn v. Commissioner, supra at 139.  The Court's statement is dicta.  In Janpol, the Court repeated this statement without discussion or necessity.  See Janpol v. Commissioner, supra at 529.  In these cases, it is not clear whether "interest actually charged" means interest stated, billed, or paid.

We hold that, in the case of a loan, the "amount involved" is the greater of the interest paid or the fair market value of the use of the loan proceeds.  Our holding and the Treasury regulations are consistent with the statute's express language. The statute refers to the greater of "money and * * * other property given" or "money and * * * other property received". See sec. 4975(f)(4).  In the case of a loan, the money "given" and "received" is the interest paid by one party and received by the other.  "Interest actually charged" can be interpreted as the stated or billed interest, and such interest is not, necessarily, "given" or "received".

IV.  Value of the Use of Loan Proceeds

Petitioners paid no interest on the loan.  As a result, the "amount involved" is the fair market value of the use of the loan proceeds (i.e., as reflected by the interest rate). Petitioners contend that the loan violates Michigan's usury laws, which prevent a lender from recovering any interest on loans that provide for interest at a rate that exceeds 7 percent.  See Mich. Comp. Laws Ann. sec. 438.31 and .32 (1978).  Petitioners further contend that the fair market value of the use of the loan proceeds is zero.  Respondent contends that the Court should conclude that the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, 88 Stat. 829, preempts Michigan's usury laws and that the "amount involved" should be calculated using a 10.5-percent interest rate.

We reject petitioners' contentions.  Petitioners contend that the fair market value of the use of the loan proceeds equals what a third-party buyer of the usurious loan would assign to the loan's stated interest.  This value should be based, however, on a hypothetical loan between a willing lender and a willing borrower rather than a hypothetical sale of the loan to a third-party buyer.

We agree with respondent that the fair market interest rate is 10.5 percent, but we reject his reasoning.  A hypothetical lender would not lend money to a hypothetical borrower at a rate less than the fair market interest rate.  The usury laws,

however, do not necessarily establish the fair market rate. See Estate of Arbury v. Commissioner, 93 T.C. 136, 143 (1989) (stating that the maximum rates set by usury laws do not necessarily reflect the economic value of the use of borrowed funds). Therefore, we need not decide whether ERISA preempts Michigan's usury laws. Respondent determined that the fair market interest rate is 10.5 percent and petitioners have not established that this rate is erroneous. See Welch v. Helvering, 290 U.S. 111, 115 (1933). Accordingly, we hold that, in determining the "amount involved" relating to petitioners' loan, 10.5 percent is the fair market interest rate.

V.   Addition to Tax

Each disqualified person liable for section 4975 excise taxes with respect to a prohibited transaction is required to file Form 5330 for each taxable year, or portion thereof, in the taxable period. Sec. 6011; sec. 54.6011-1(b), Pension Excise Tax Regs. Section 6651(a)(1) imposes an addition to tax for the failure to file a required return, unless petitioners establish that such failure is due to reasonable cause and not due to willful neglect. Petitioners failed to file excise tax returns for the years in issue and have failed to establish that they had reasonable cause not to file such returns. Accordingly, petitioners are liable for the section 6651(a)(1) additions to tax.

Decision will be entered

for respondent.