**Eleanor M. BALLARD,**
**Plaintiff–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Defendant–Appellee.**

No. 87–2641.

United States Court of Appeals,
Seventh Circuit.

Argued May 19, 1988.

Decided July 28, 1988.

Lawrence A. Jegen, III, Indianapolis, Ind., for plaintiff-appellant.

Barbara I. Hodges, Chief Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before WOOD, Jr., and KANNE, Circuit Judges and REYNOLDS, Senior Circuit Judge.*

KANNE, Circuit Judge.

The Commissioner of the Internal Revenue Service assessed gift taxes against Eleanor M. Ballard and imposed a penalty for the late filing of her gift tax return. The taxpayer appealed to the tax court which upheld the imposition of the tax as well as the penalty. We reverse.

Mrs. Ballard entered into a Contract for Conditional Sale of Real Estate with her three children on June 23, 1981. Under the terms of the contract, the children each received a 33⅓% interest in her 286–acre farm, which had a fair market value of $582,000.00. In return, the children agreed to pay Mrs. Ballard $1,000.00 upon execution of the contract. Additionally, during the first five years of the contract, the children agreed to pay 6% interest on the $386,000.00 sale price. Beginning in the sixth year, the children were obligated to pay $25,590.95 annually, covering both principal and the remaining interest payments. Put another way, Mrs. Ballard sold her property to her children for $386,000.00 at an interest rate of 6% per annum.

On October 26, 1981, Mrs. Ballard filed a gift tax return for the calendar quarter ending June 30, 1981.[1] She reported a gift of $184,000.00 equalling the difference between the fair market value of the real estate ($572,000.00) and the face value of the consideration she was to receive from her children under the land sales contract ($386,000.00). Because the taxes owed on the $184,000.00 gift did not exceed a tax credit to which Mrs. Ballard was entitled under the Code, she reported zero taxes due.

The Commissioner issued a notice of a deficiency of gift tax in the amount of $78,340.77 and assessed an $11,751.12 penalty for Mrs. Ballard's failure to timely file her gift tax return. The Commissioner determined that the discounted value of the consideration Mrs. Ballard was to receive under the contract, was only $134,298.20 because the market rate of interest was 18% and not 6% as Mrs. Ballard had provid-

---

* The Honorable John W. Reynolds, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

1. The gift tax return was actually due on August 15, 1981, but because Mrs. Ballard was advised by counsel that she would owe no gift tax and that no penalty would be assessed for filing her return past the deadline, she did not file until October.

ed in the land sales contract.[2] Thus, the difference between the market value of the property ($572,000.00) and the now-discounted value of the consideration ($134,298.26) was $437,701.80, representing the actual gift to Mrs. Ballard's children. Based on the revised value of the gift, Mrs. Ballard was assessed higher taxes which no longer were exceeded by the unified tax credit. Consequently, Mrs. Ballard owed gift taxes.

Mrs. Ballard appealed the notice of deficiency to the United States Tax Court arguing that § 483 of the Internal Revenue Code provided a "safe harbor" and permitted her to charge a 6% rate of interest on an installment land sale contract without either income or gift tax consequences.

The Commissioner responded that the 6% "safe harbor" interest rate contained in § 483, applied only to income taxes and did not have anything to do with the valuation of the gift made by Mrs. Ballard to her children.

The U.S. Tax Court agreed:

The issue in this case is valuation, namely, the value for gift tax purposes of the consideration received by petitioner in transferring the real estate described in the contract for sale ... Section 483 has nothing to do with valuation....

The court then determined that the consideration to be paid by Mrs. Ballard's children was worth substantially less than $386,000.00 and hence, the gift to the children was substantially larger than the one reported by her. The tax court affirmed the Commissioner's imposition of gift taxes. The court also ruled that Mrs. Ballard's failure to file a timely gift tax return was not due to reasonable cause, despite the fact that she had been advised by her attorney that no penalty would result from a late filing where no taxes were due. Consequently, the tax court also affirmed the imposition of a penalty against Mrs. Ballard.

■ On appeal, Mrs. Ballard makes a very simple, but compelling argument.

The prefatory language of § 483 specifically states that § 483 applies to all provisions of the Internal Revenue Code, including the gift tax provisions. Thus, although valuation of property, for purposes of gift taxes, is not directly related to the imputation of taxes on installment contracts for purposes of income taxation; a taxpayer who complies with § 483 and charges a "safe harbor" rate of interest on an installment sales contract, should not be penalized if the "safe harbor" rate of interest is below the market rate of interest for purposes of gift tax valuation.

Section 483 as it existed at the time of Mrs. Ballard's gift provided, in part:

(a) AMOUNT CONSTITUTING INTEREST.—For purposes of this title, in the case of any contract for the sale or exchange of property there shall be treated as interest that part of a payment to which this section applies which bears the same ratio to the amount of such payment as the total unstated interest under such contract bears to the total of the payments to which this section applies which are due under such contract....

26 U.S.C. § 483 (1954). Section 483 was initially enacted as a means of insuring that a taxpayer would not circumvent income tax provisions by structuring an installment contract to provide only for payments of principal (taxed as capital gains) and no interest (taxed as ordinary income). If an installment contract did not charge at least a minimum rate of interest, the "safe harbor" rate, a rate of interest greater than the "safe harbor" rate would be imputed to the contract. At the time Mrs. Ballard entered into the sales contract with her children, the "safe harbor" interest rate was 6%, far below the 18% market rate of interest.

By complying with the requirements of § 483 and charging her children 6% interest in the land sale contract, Mrs. Ballard had clearly followed the Code and properly insulated herself from any adverse income

2. Because the Commissioner found that the market rate of interest was 18%—12% higher than the 6% interest charged by Mrs. Ballard in the sales contract—the Commissioner discounted the $386,000.00 sale price to reflect an 18% interest rate.

tax consequences. That is, no more than 6% of the contract price could be taxed as ordinary income. The dispute on appeal is whether Mrs. Ballard's compliance with § 483 of the Code also insulated her from any adverse gift tax consequences.

The Commissioner argues, and the tax court found, that if the compensation paid to Mrs. Ballard under the contract was computed at the market rate of interest—18%—it would have a present worth less than what Mrs. Ballard declared on her gift tax return, thereby increasing the worth of the gift made to her children. Mrs. Ballard, while conceding that the mathematics is correct, argued that the market interest rate could not be used to determine the value the consideration received. Rather, the "safe harbor" rate of 6% should have been and was correctly used to determine the value the consideration. This is so, Mrs. Ballard argues, because § 483 applies to all provisions of the tax code (not just income tax provisions) by virtue of the prefatory language in that section which states, "for purposes of this title."[3]

On appeal, the parties ask this court to determine whether the words "for purposes of this title" mean what they say. Mrs. Ballard argues it could not be any plainer. The Commissioner argues "for purposes of this title" really means "for purposes of this *sub* title" given the legislative history of § 483 and the section's placement in the Code. Mrs. Ballard counters by pointing out that legislative history is irrelevant unless the words "for purposes of this title" are ambiguous, which they are not. Further, § 483's location in the middle of income tax provisions is irrelevant since § 7806 of the Code states that no inference or implication is to be drawn from a section's placement in the Code.

No review of legislative history is necessary as the language of § 483 is clear.

Section 483 and its "safe harbor" provision, by its very terms, is applicable to all portions of the Code. According to the tax court's own decisions, a statute's legislative history may be used to interpret the statute only if:

(1) the wording is ambiguous; or (2) the wording is clear but nonetheless completely at variance with the statute's purpose, as articulated in the legislative history. *See, e.g., United States v. Public Utilities Commission of California*, 345 U.S. 203 [295], 315 [73 S.Ct. 706, 717, 97 L.Ed. 1020] (1953); *Johansen v. United States*, 343 U.S. 427, 432 [72 S.Ct. 849, 853, 96 L.Ed. 1051] (1952);

.     .     .     .     .

*Brown v. Commissioner*, T.C. Memo. 1982–217 (April 26, 1982); *See also First Chicago Corp. v. Commissioner*, 80 T.C. 648 (1983); *Teichart & Son, Inc. v. Commissioner*, 18 T.C. 785 (1952).

Although we certainly understand why, in this case, the Commissioner would want to draw a distinction between rates used for income tax purposes and for valuation of gifts for gift tax purposes, such a distinction simply cannot be found in the language of § 483.

Even if we were to look to legislative history, there is nothing in that history which states or suggests that § 483 *does not* apply to gift taxes. Thus, it does not appear that the application of § 483 to the gift tax provisions circumvents the purpose of that provision and no further review of legislative history is necessary.[4]

Neither are we convinced by the cases the Commissioner cites for the proposition that Mrs. Ballard's reliance on § 483 was inappropriate. Although the facts in *Blackburn v. Commissioner*, 20 T.C. 204 (1953) are nearly identical to the facts of this case,[5] the *Blackburn* decision predated

**3.** "Title" refers to Title 26 of the United States Annotated Statutes, wherein all provisions relating to taxation are contained.

**4.** We note in passing, that under the 1984 Deficit Reduction Act, § 483 was moved into newly enacted § 1274 and § 7872 applying to both gift and income tax provisions. Moreover, safe har-

bor interest rates for real estate sales between related parties are still found in § 483.

**5.** In *Blackburn,* the 2¼% interest charged under a land sale contract was below the 4% market rate. The Commissioner's decision to discount the contract's consideration for gift tax pur-

the implementation of § 483. There is no dispute that the *Blackburn* court properly discounted the consideration provided for under that land sales contract. There is also no dispute that this valuation process was not subject to the constraints of § 483.

At oral argument,[6] we understood counsel for the IRS to posit that if Mrs. Ballard had failed to provide for any interest rate in the land sales contract or if she had provided for a rate below the "safe harbor" rate, a prescribed amount of interest would have been imputed to the contract for income tax purposes and that imputed interest rate would then have been the relevant interest rate for all other purposes of the Code as well.

"Now, as to Mrs. Ballard," the IRS says, "if she had only failed to provide for the 6% minimum rate required by § 483, an interest rate of 7% would have been imputed by regulation[7] and that interest rate, though well below the market rate of 18%, would have been used to calculate her gift tax." "But," the IRS continues, "because Mrs. Ballard complied with § 483 and charged the minimum 6% interest, we will not use that 6% rate to calculate her gift taxes. We must use the market rate of 18%. And, if the court pleases, we do this because § 483 does not mean what it says." This argument is akin to that made by Humpty Dumpty in Lewis Carrol's *Alice in Wonderland.* "When *I* use a word," Humpty Dumpty said in rather scornful tone, "it means just what I choose it to mean—neither more nor less."

Though perhaps well suited for a fairy tale, this sort of logic fails here. We conclude that § 483 meant what it clearly said, that it applied for the purposes of Title 26 which includes both income and gift tax

provisions. Mrs. Ballard properly relied on the "safe harbor" rate of interest provided in § 483 when she filed her 1981 gift tax return. Consequently, the Commissioner's assessment of gift taxes was improper.

■ Having ruled that Mrs. Ballard owed no taxes, we must now determine whether a penalty should have been assessed for the untimely filing of Mrs. Ballard's tax return. A taxpayer may avoid the mandatory penalty for an untimely filing of a return if the taxpayer is able to show reasonable cause for that delay. 26 U.S.C. § 6651(a) (1954). Under a recent Supreme Court decision, a taxpayer who does *not* file any return on the advice of his attorney has shown reasonable cause but a taxpayer who has been advised that a *late* filing will result in no penalty has not. *United States v. Boyle,* 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985); *Jackson v. Commissioner,* 86 T.C. 492 (1986).

In certain cases, and we think this is such a case, this distinction would seem incongruous. Mrs. Ballard, a 68 year old widow, relied on the written legal advice of her attorney. When she filed a late return, she did not, as the Commissioner argued in his brief, "cavalierly ignore the due date of her return." Certainly, it would have been more prudent to file a request for an extension of time. However, there is nothing in the record which would indicate that Mrs. Ballard willfully refused to do so. Rather, it appears her failure to timely file was the result of her attorney's advice and as such, it would seem inequitable to penalize Mrs. Ballard—especially since she owed no taxes. Nevertheless, our hands are tied by the *Boyle* decision. Mrs. Ballard, by relying on her attorney's advice that no penalty would result from a late filing, has not

---

poses, to reflect the market rate of interest, was upheld by the tax court.

**6.** At oral argument, counsel for the Commissioner stated that:

[i]f you look at subsection 483(b) for purposes of determining whether there's unstated interest in a deferred payment transaction such as this, it says 'for purposes of this section' and this section only you determine unstated interest by the 'excess of the sum of payments over the sum of the present values of such

payments' and those are determined by reference to the safe harbor rates that are established in the regulations. That is limited to determining total unstated interest for purposes of this section alone. When you go back up into § 483(a) *all it says is that if interest is imputed ... that interest alone will be treated 'for all purposes of this title.'* That's all § 483(a) says. (emphasis added).

**7.** Treas.Regs. on Income Tax, 26 C.F.R. § 1.483–1(g) (1954).

shown reasonable cause for her delay. Accordingly, the imposition of a penalty, pursuant to § 6651 of the Code, technically was proper.

However, the amount of the penalty assessed against Mrs. Ballard must be based on the amount of taxes she owed. 26 U.S. C. § 6651(a)(1). Because we have found that Mrs. Ballard owes no "additional" gift taxes, and because no gift taxes were ever owed under Mrs. Ballard's original gift tax return, no penalty can be assessed.

For the foregoing reasons the decision of the tax court is REVERSED in its entirety and judgment is ordered entered in Mrs. Ballard's favor.