**Melvin S. COHEN, Eileen D. Cohen and Edith Phillips, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**Nos. 89–2792, 89–2793 and 89–2794.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 10, 1990.

Decided Aug. 13, 1990.

Rehearing and Rehearing En Banc Denied Sept. 20, 1990.

---

Phillip H. Martin, Michael J. McDonnell, Dorsey & Whitney, Minneapolis, Minn., for petitioners-appellants.

Gary R. Allen, Kenneth L. Greene, Mary F. Clark, Dept. of Justice, Tax Div., Appellate Section, Charles S. Casazza, U.S. Tax Court, Peter K. Scott, I.R.S., Washington, D.C., for respondent-appellee.

Before POSNER, RIPPLE, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Under § 2501(a)(1) of the Internal Revenue Code, a tax is imposed upon an individual's transfer of property by gift. In *Dickman v. Comm'r*, 465 U.S. 330, 104 S.Ct. 1086, 79 L.Ed.2d 343 (1984), the Supreme Court held that an interest-free demand loan results in a taxable gift to the debtor for the use of the money lent. The issue presented for our review today—i.e., how the value of such a gift should be measured—was not expressly decided by the Court in *Dickman*, nor has it been addressed by any other court to date. As framed by the parties, the issue is whether the Commissioner of Internal Revenue may value the taxable gifts which resulted from interest-free demand loans outstanding prior to June, 1984, pursuant to the procedures and interest rates adopted in 1985 and set forth in Revenue Procedure 85-46.

We conclude that he may and, accordingly, affirm the decision of the Tax Court.

I.

The facts in this case have been stipulated by the parties.[1] Eileen Cohen, together with her husband Melvin Cohen, formed the Alyssa Marie Alpine Trust pursuant to a Trust Agreement for the Benefit of Alyssa Marie Alpine dated October 19, 1977. Alyssa is the granddaughter of Eileen and Melvin Cohen. Edith Phillips, Eileen's mother and Alyssa's great-grandmother, later established the Alyssa Marie Alpine Trust No. 2 pursuant to a Trust Agreement dated March 13, 1980. As in the first trust, Alyssa Marie Alpine is designated as the principal beneficiary. In June of 1983, Edith Phillips formed a second trust, the 1983 Cohen Family Trust, which designates certain of her lineal descendants as its principal beneficiaries. Hereinafter, all trusts are referred to collectively as "Trusts."

In reliance on *Crown v. Comm'r*, 585 F.2d 234 (7th Cir.1978),[2] Eileen Cohen and Edith Phillips made non-interest bearing demand loans to each of the Trusts during the years from 1979 to 1984. The total annualized amount of the loans made to the Trusts was over $69 million. Pursuant to our decision in *Crown*, however, neither taxpayer reported the value of these loans as taxable gifts on their gift tax returns for the taxable years at issue.

On February 22, 1984, the United States Supreme Court held in *Dickman v. Comm'r, supra*, that interest-free demand loans such as those made by petitioner result in taxable gifts of the reasonable value of the use of the money lent. In response to that decision, the IRS issued Information Release 84-60 on May 11, 1984, which provided a uniform procedure

---

1. Eileen Cohen, Melvin Cohen, and Edith Phillips have each appealed the decisions of the Tax Court in their individual cases. For purposes of our review, however, the parties have stipulated that the opinion of the Tax Court in *Eileen D. Cohen v. Comm'r of Internal Revenue*, 92 T.C. 1039 (1989), will constitute the Tax Court opinion in each of the latter two petitioners' appeals and that our resolution of the issues raised by Eileen Cohen in her appeal will govern. Accordingly, the "petitioner" to which we refer is Eileen Cohen.

2. In *Crown v. Comm'r*, this court held that interest-free demand loans made to family members did not give rise to gift-tax liability. This court's decision was subsequently overruled by *Dickman v. Comm'r, supra*.

for valuing gifts which resulted from interest-free demand loans outstanding prior to January 1, 1984. The Commissioner set the interest rates to be used in valuing those gifts at the lesser of the statutory interest rate for refunds and deficiencies under § 6621 of the Internal Revenue Code or the annual average rate for three-month Treasury Bills. These interest rates were formally published by the IRS on September 16, 1985, in Revenue Procedure 85–46, 1985–2 Cum.Bull. 507 ("Rev.Proc. 85–46"), which set forth the procedures and rules for valuing gifts resulting from loans which were outstanding either prior to June 7, 1984, or after June 6, 1984, but which were repaid or modified prior to September 17, 1984.[3]

Subsequent to and in light of the Supreme Court's decision in *Dickman*, petitioner filed amended Forms 709, amended United States Quarterly Gift Tax Returns for the calendar quarters ended on December 31, 1980 and December 31, 1981, and amended Forms 709 for the calendar years ended December 31, 1982 and December 31, 1983. In these amended returns, petitioner reported the interest-free demand loans which she had made to the Trusts as taxable gifts. Petitioner also filed a Form 709 for the 1984 calendar year reporting as taxable gifts the value of the interest-free demand loans she had made to two of the trusts in that year. In valuing these gifts, petitioner, in apparent reliance on the language of Revenue Ruling 73–61, 1973–1 Cum.Bull. 408 ("Rev.Rul. 73–61"), utilized the interest rates specified in §§ 25.2512–5(e) and 25.2512–9(e) of the United States Treasury Regulations. These rates were 6% from the beginning of the taxable period at issue until November 30, 1983, and 10% from December 1, 1983, through the end of the period at issue.

After examination of petitioner's amended gift tax returns, the Commissioner issued a statutory notice of deficiency. In determining the amount of the deficiency, the Commissioner measured the value of the taxable gifts at issue, as per Rev.Proc. 85–46, by applying the following interest rates to the loan balances outstanding during each calendar year.

| Calendar Year | Interest Rate |
| --- | --- |
| 1979 | 6.0% |
| 1980 | 11.5% |
| 1981 | 12.0% |
| 1982 | 10.6% |
| 1983 | 8.6% |
| 1984 | 9.9% |

These rates are higher than the hypothetical 6.271% rate of return which the parties have stipulated would have been realized on the loans using the interest rates set forth in §§ 25.2512–5(e) and 25.2512–9(e) of the Treasury Regulations. These interest rates are also higher than the 6.28% average yield which the Trustees obtained through their investment of the proceeds of the interest-free demand loans over the period in question.[4]

Ms. Cohen filed a petition in the United States Tax Court seeking a redetermination of the deficiency alleged by the Commissioner. Relying on the Supreme Court's decision in *Dickman* and the limited guidance which that decision gives on the valuation issue, the Tax Court upheld as reasonable the Commissioner's use of the interest rates prescribed in Rev.Proc. 85–46. Specifically, the Tax Court rejected petitioner's argument that Rev.Rul. 73–61 required the Commissioner to value the gifts pursuant to the interest rates set forth in §§ 25.2512–5(e) and 25.2512–9(e) of the Treasury Regulations. The Tax Court also rejected petitioner's assertion that the actual yield realized by the loan proceeds was the proper measure of the use of the money lent. Finally, the Tax Court held, contrary to petitioner's assertions, that § 483 of the

---

**3.** In the Tax Reform Act of 1984, Congress added § 7872 to the Internal Revenue Code, Pub.L. No. 98–369, Sec. 172(a), 98 Stat. 699. Section 7872, which became effective June 6, 1984, governs the income and gift tax consequences of gifts resulting from interest-free and below-market loans outstanding after June 6, 1984. Since all loans at issue in this case were outstanding prior to June 6, 1984, § 7872 is not directly applicable.

**4.** The Trustees invested the proceeds of the interest-free demand loans primarily in short-term tax-exempt investments and tax-exempt money market funds.

Internal Revenue Code does not provide a cap on the interest rates which may be imputed to the taxable gifts which result from interest-free demand loans. Petitioner appeals from the Tax Court's decision.

## II.

■ The Tax Court's analysis of the valuation issue which we review today adopted as reasonable the guidance provided by the Commissioner of Internal Revenue in Rev.Proc. 85–46. Revenue Procedure 85–46, issued after the Court's decision in *Dickman*, sets forth valuation and reporting procedures for taxable gifts which result from certain low-interest and interest-free ("below-market") demand loans. The stated purpose of Rev.Proc. 85–46 is to provide guidance on precisely the issue which was left open by the Court in *Dickman*. Indeed, referring to *Dickman*, the Commissioner stated, "[w]hile the Court did not decide the issue of valuation of such a gift, the Court did state that the right to use money is plainly a valuable right, readily measurable by reference to current interest rates." Rev.Proc. 85–46, 1985–2 Cum.Bull. at 507. Relying on this interpretation of *Dickman*, the Commissioner proceeded to prescribe that the value of gifts which result from below-market demand loans may be computed by applying the lesser of the interest rate set forth in § 6621 of the Code or the average annual rate for three-month Treasury Bills; two relatively favorable interest rates from the standpoint of the market. Fundamental to petitioner's challenge to the application of Rev.Proc. 85–46 is the assertion that the Commissioner's selection of these rates finds no support in the Supreme Court's *Dickman* decision. We disagree.

Although the valuation issue was not expressly decided by the Court in *Dickman*, it was discussed. Specifically, the Court analogized the value associated with the use of money lent in an interest-free demand loan to the value which a hypothetical tenant receives from the rent-free use of property and land. The Court stated, "[t]he value of the use of money is found in what it can produce; the measure of that value is interest—'rent' for the use of the funds." 465 U.S. at 338, 104 S.Ct. at 1091. Elaborating, the Court stated, "[t]he right to use money is plainly a valuable right, readily measurable by reference to current interest rates; the vast banking industry is positive evidence of this reality." *Id.* Thus, without deciding the valuation issue, the Court did intimate as to how the value of such a gift may be determined. Indeed, speaking directly on the valuation issue, the Court stated, "the Commissioner need not establish that the funds lent did in fact produce a particular amount of revenue; it is sufficient for the Commissioner to establish that a certain yield could readily be secured and that the reasonable value of the use of the funds can be reliably ascertained." 465 U.S. at 344, 104 S.Ct. at 1094–95 n. 14. We, therefore, must determine whether the procedures and interest rates set forth by the Commissioner in Rev.Proc. 85–46 allow for a "reasonable value" to be imputed to the gifts. For the reasons discussed below, we believe that they do.

Two fundamental considerations support the reasonableness of the procedures and interest rates set forth in Rev.Proc. 85–46. First, Rev.Proc. 85–46 provides for the valuation of these gifts in a manner that is inherently consistent with fundamental gift-valuation principles. As a general rule, the valuation of gift property under § 2512 of the Code is to be undertaken pursuant to an objective "willing buyer-willing seller" test. Treasury Regulation § 25.2512–1, which deals precisely with this generalized valuation principle, provides, "[t]he value of the property is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell it, and both having reasonable knowledge of relevant facts."[5] The Supreme Court appeared to take cognizance of this fundamental valuation principle in *Dickman* when it alluded to the fact that

5. As the Tax Court correctly concluded, this test does not contemplate the consideration of subjectivities, such as the actual yield realized from the loan proceeds, which petitioner would engraft upon the valuation question.

the value of the use of money lent is the value of the "rent" which has been forgiven for the use of that money. A reasonable interpretation of this language, in light of the traditional objective manner in which gift property is valued, is that the "rent" alluded to is the interest rate at which persons and/or institutions in the marketplace would negotiate at arm's length to borrow and/or lend that money. Revenue Procedure 85–46 simply accounts for this reality by providing for the lesser of two very favorable market interest rates to be applied in determining the value of the money lent in a below-market demand loan. We find nothing unreasonable about such an interpretation.

The reasonableness of the guidance provided by the Commissioner on this valuation issue becomes even more apparent in light of Congress' efforts at dealing with an almost identical issue—i.e., § 7872 of the Code and its treatment for gift-tax purposes of below-market loans outstanding after June 6, 1984. Under § 7872(a), the amount of the gift resulting from the below-market loan is measured by reference to the amount of interest which has been foregone in the transaction.[6] Section 7872(f)(2)(B) provides that the interest rate to be imputed in determining the value of these gifts is "the Federal short-term rate in effect under section 1274(d) for the period in which the amount of foregone interest is being determined, compounded semiannually." That Federal short-term rate is "the rate determined by the Secretary based on the average market yield ... on outstanding marketable obligations of the United States with remaining periods to maturity of 3 years or less." § 1274(d)(1)(C). Interestingly, one of the two potentially applicable rates under Rev. Proc. 85–46—i.e., the rate set forth in § 6621—utilizes this same Federal short-term rate as a base and differs only by adding two or three percentage points. Nobody suggests that § 7872 is directly applicable to the loans at issue in this case. *See* note 3, *supra.* Nevertheless, we refer to § 7872 because we think it significant

that Congress has opted to value the below-market loans governed by that section in a manner that is not substantially different from that prescribed by the Commissioner for earlier loans in Rev.Proc. 85–46. Specifically, we note that pursuant to both procedures the value of the gift aspect of the loan is determined by reference to the amount of interest, measured by a relatively favorable market rate, which has been foregone in the below-market transaction. We, like the Commissioner and Congress, believe this to be a reasonable method of valuing the use of the money lent in below-market demand loans.

As is evident from the fact of this appeal, petitioner does not concur in this assessment of the reasonableness of the procedures and interest rates prescribed under Rev.Proc. 85–46. Her primary challenge is to the interest rates applied. Specifically, she argues that since the Commissioner had earlier indicated in Rev.Rul. 73–61 that below-market demand loans would be valued pursuant to the interest rates set forth in Treas.Reg. § 25.2512–5, it is unfair for the Commissioner to retroactively apply the higher interest rates set forth in Rev. Proc. 85–46. The fundamental premise of this "retroactivity" argument is that Rev. Rul. 73–61 affirmatively established that below-market demand loans would be valued under Treas.Reg. § 25.2512–5. As the Commissioner points out, this premise is anything but clear.

In Rev.Rul. 73–61, the Commissioner formally announced the IRS position that it would not follow the decision in *Johnson v. United States*, 254 F.Supp. 73 (N.D.Tex. 1966), in which the court held that interest-free loans made by a parent to his son were not taxable gifts. Two separate interest-free loans were at issue in *Johnson:* (1) a $50,000 loan payable in ten years (a "term" loan); and, (2) a $200,000 loan payable on demand (a "demand" loan). Revenue Ruling 73–61 purports to give advice as to the gift-tax consequences of both loans.

---

**6.** Under § 7872(a)(1), the foregone interest is treated as having been "transferred from the lender to the borrower, and retransferred by the borrower to the lender as interest."

Fundamental to the ruling's discussion of how to compute the value of the gifts resulting from these loans is the maxim that a gift cannot be valued until it is susceptible of valuation—that is, until it is "complete" in the sense that the donor has so parted with dominion and control such that he can no longer alter its disposition. Because the gift resulting from the term loan was "complete" for purposes of valuation on the date that the money and the note exchanged hands, the ruling concludes that the value of that gift is immediately ascertainable under accepted actuarial methods. A general "see" citation to § 25.2512–5 of the regulations is provided.[7] With regard to the gift resulting from the demand loan, however, the ruling correctly points out that valuation on the date of the loan is not possible in light of the fact that the term of the loan was not yet determined. While recognizing that valuation of the gift resulting from the demand loan will eventually be possible once the "term" of the loan is set, the Commissioner makes no analogous reference to § 25.2512–5 of the regulations. The ambiguity which results from this omission has led to the conflict in opinion as to whether Rev.Rul. 73–61 stands for the proposition that below-market *demand* loans should be valued pursuant to the interest rates set forth in § 25.2512–5.

Petitioner argues that the clear import of the language was that § 25.2512–5 of the regulations was meant to apply to both types of loans. She posits that no rationale supports the conclusion that the Commissioner would choose to apply one set of interest rates to term loans and a different set to demand loans when the only difference between the two is the timing of the valuation determination. Indeed, it would appear that such a variation in rates would

be one without meaning. The Commissioner responds that Rev.Rul. 73–61 does not even obligate the Commissioner to apply the interest rates set forth in § 25.2512–5 to term loans. According to the Commissioner, the reference to § 25.2512–5 is simply a "see" reference directing the taxpayer's attention to an illustrative, though not necessarily applicable, set of actuarial tables. This position also has some merit. Section 25.2512–5 addresses the valuation of a variety of interests in property ranging from reversions to life estates. Revenue Ruling 73–61, however, is silent regarding which interest in property is most analogous to that acquired under an interest-free demand loan and which actuarial table should apply.

We need not resolve this issue, however, in that the manner by which interest-free demand loans may have previously been valued does not alter our resolution of the reasonableness of the interest rates set forth in Rev.Proc. 85–46. Referencing the discretion afforded the Commissioner under § 7805 of the Code, the Supreme Court has stated, "the Commissioner may change an earlier interpretation of the law, even if such a change is made retroactive in effect (citations omitted). This rule applies even though a taxpayer may have relied to his detriment upon the Commissioner's prior disposition." *Dickman,* 465 U.S. at 343, 104 S.Ct. at 1094; *see also, Schuster v. Comm'r,* 800 F.2d 672 (7th Cir.1986); *Yarbro v. Comm'r,* 737 F.2d 479 (5th Cir. 1984). Petitioner argues that the flexibility afforded the Commissioner under this language is not applicable in this case because Rev.Proc. 85–46 does not "interpret the law" as that phrase is used by the Supreme Court.[8] We believe that Rev.Proc. 85–46 does interpret the law, however. As is evident from its name, Rev.Proc. 85–46 is

---

7. Section 25.2512–5 of the regulations provides valuation rules applicable to annuities, life estates, terms for years, remainders, and reversions. At the time Rev.Rul. 73–61 was issued, § 25.2512–5 was applicable to transfers which occurred prior to December 31, 1970. In 1984, § 25.2512–5 was amended to apply to transfers occurring after November 30, 1983. Section 25.2512–9 of the regulations applies to earlier transfers.

8. Although not cited by the petitioner, 26 C.F.R. § 601.601 (1989), provides some support for this proposition. Section 601.601(d)(2) defines a "revenue ruling" as "an official interpretation" of the law and a "revenue procedure" as "a statement of procedure that affects the rights or duties of taxpayers...."

obviously a statement of procedure regarding the valuation of gifts which result from interest-free demand loans. As a response to the Court's decision in *Dickman,* however, it is also apparent that Rev.Proc. 85–46 is an "interpretation" of the newly enunciated principles surrounding the gift-taxability of interest-free demand loans. Thus, even if the application of Rev.Proc. 85–46 does amount to a departure from the practice set forth in Rev.Rul. 73–61, this was a departure which the Commissioner was permitted to pursue.

■ As an additional challenge to the reasonableness of the application of the interest rates set forth in Rev.Proc. 85–46, petitioner argues that the application of these rates to the loans at issue will create an anomalous situation in which the rates applicable to demand loans (via Rev.Proc. 85–46) will be *higher* than the rates applicable to term loans (via Rev.Rul. 73–61) for the period in issue. This, petitioner argues, is contrary to the generally accepted principle that an interest-free term loan is more valuable to the *donee* than an interest-free demand loan. The reasoning underlying this principle is that a demand loan's "demand" status makes more difficult for the *donee* to invest the loan proceeds in a long-term investment yielding more favorable returns. Thus, the interest rate a *donee* will be willing to pay to borrow funds under a demand loan will be lower than the interest rate he would pay to borrow the same funds under a term loan. *See Dickman,* 465 U.S. at 338, 104 S.Ct. at 1091. We do not dispute this general principle. We do dispute petitioner's assertion that Rev.Proc. 85–46 turns this principle on its head, however.

In the gift tax context, the interest rate which is imputed to value the gift resulting from a below-market loan does not impact the *donee;* to the contrary, the impact is on the *donor.* The United States Tax Court observed this fact in *Arbury v. Comm'r,* 93 T.C. 136 (1989), when it stated, "[i]mposition of the Federal gift tax, based upon the true value of the property actually transferred, is not the same as actually charging interest to the borrower...." *Id.*

at 137. Put in its most fundamental form, a donor who loans money in an interest-free demand loan has not charged interest on that loan; nor has the donee paid interest. Rather, the donor has simply made a gift to the donee, the value of which will be determined by the interest rate which is imputed under Rev.Proc. 85–46. Thus, in the gift tax context, the concerns underlying the general principle that demand loans are less valuable to the *donee* than term loans are not implicated; the *donee* is paying no interest at all.

Setting the donee aside, the question becomes, "is a demand loan more valuable to the *donor* than a term loan?" Certainly, the "demand status" of a demand loan permits the donor to recall the loan at any time; a privilege not afforded donors by loans fixed for a specific term. In light of this fact, it is conceivable that the value to the *donor* of a gift resulting from a demand loan is greater than that which results from a term loan. Whatever may be the relative values to the *donor* between the gifts which result from the two types of loans (an issue which we care to explore no further), it is clear that the *donee* is not affected by the interest applied to the donor. It follows, therefore, that the donee, who was the focus of concern in the general principle referred to above, is not affected by our resolution of the reasonableness of the interest rates prescribed in Rev. Proc. 85–46.

■ As a final challenge to the application of Rev.Proc. 85–46, petitioner argues under this court's decision in *Ballard v. Comm'r,* 854 F.2d 185 (7th Cir.1988), that § 483 of the Code applies as a cap on the rate of interest which may be imputed to these gifts. In *Ballard,* this court held that § 483 applied to limit the interest rate which could be used to value the gift which resulted from a below-market installment sales transaction between a mother and her children. Specifically, we held that § 483 applies to installment sales contracts, not only for income tax purposes, but also for gift tax purposes. *Id.* at 188. Petitioners argue that since the valuation of the gifts resulting from installment sales contracts

are subject to § 483, it follows that the valuation of these interest-free demand loans must also be subject to the interest cap set forth in § 483. What petitioner's argument ignores, however, is that § 483 is, by its very terms, applicable only to installment sales contracts for the sale or exchange of property. Indeed, the existence of an installment sales contract was the only basis upon which we could apply § 483 in *Ballard.* Since this case does not involve an installment sales contract, we conclude that neither § 483 nor our decision in *Ballard* have any bearing on the resolution of the issue presented herein.

### III.

For all of the foregoing reasons, we AF-FIRM the decision of the Tax Court.