Victor D. **DENENBURG and wife,**
**Sandra J. Denenburg,**
**Plaintiffs–Appellants,**

v.

**UNITED STATES of America,**
**Defendant–Appellee.**

No. 90–2257.

United States Court of Appeals,
Fifth Circuit.

Jan. 4, 1991.

Rehearing Denied Jan. 30, 1991.

John A. Bailey, Houston, Tex., for plaintiffs-appellants.

Lillian D. Brigman, Atty., Tax Div., U.S. Dept. of Justice, Dallas, Tex., Curtis C. Pett, Gary R. Allen, Chief, Charles E. Brookhart, Appellate Section, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before GARWOOD and WIENER, Circuit Judges, and VELA [*], District Judge.

WIENER, Circuit Judge:

Victor D. Denenburg (Taxpayer), and his wife, Sandra J. Denenburg, plaintiffs-appellants, paid penalties imposed by the Internal Revenue Service (IRS), under the Internal Revenue Code of 1954 (I.R.C.) § 6651,[1] for late filing of personal income tax returns for 1978 and 1979, then filed this suit in district court seeking refund of those penalties. The government filed a motion for summary judgment which the district court granted after finding that the accounting advice relied on by the Taxpayer and his wife did not constitute "reasonable cause" under I.R.C. § 6651(a)(1)'s exception and thus did not excuse their failure to file their returns in a timely manner. The Taxpayers timely appealed. Agreeing with the district court's finding that "at no time were [the Taxpayers] told by [their accountant] that the returns need not be [timely] filed," we affirm.

I.

BACKGROUND

Taxpayer and two of his brothers owned all of the capital stock of a corporation engaged in the equipment rental business. The three brothers experienced differences of opinion in 1978, which the Taxpayer attempted to resolve by arranging for the

---

[*] District Judge of the Southern District of Texas, sitting by designation.

1. 26 U.S.C. § 6651.

corporation to redeem all shares held by the other two brothers. The stock purchase agreement, however, specified that the stock belonging to Taxpayer's brothers would be purchased by the Taxpayer. Nevertheless, payments for purchase of that stock were made with corporate funds and recorded on the books of the corporation as purchases of treasury stock, in accordance with the brothers' original understanding.

When Taxpayer's accountant (the CPA) became aware of the provisions of the stock purchase agreement and the way payments had been made and recorded on the books of the corporation, he was concerned that the Taxpayer might be charged with receiving constructive dividends, thereby generating substantial "phantom" ordinary income for the Taxpayer. After the Taxpayer confirmed to the CPA that the original deal struck by the brothers was for the corporation to redeem his brothers' stock, and that only through inadvertence did the stock purchase agreement call for the Taxpayer to purchase that stock personally, the CPA advised the Taxpayer to get his brothers to correct the stock purchase agreement to reflect that the corporation was the true party purchaser. The CPA obtained the maximum extension for Taxpayer's 1978 return. As of the extended due date (October 15, 1979), however, the conflict between the wording of the purchase agreement and the way the transaction had been negotiated and booked remained unresolved due to the continuing ill will between the Taxpayer and his brothers.

The Taxpayer and his wife did not file their signed 1978 return until December 15, 1980, a year and two months after the extended deadline of October 15, 1979. Because the problem with the stock purchase agreement persisted, the CPA also obtained extensions for Taxpayer's 1979 return to October 15, 1980, but the 1979 return was not filed until May 19, 1981, approximately seven months late.

The IRS assessed penalties against the Taxpayer and his wife pursuant to I.R.C. § 6651(a)(1)—$14,153.77 for 1978, and $43,-157.74 for 1979—for failure to file returns for those years by their respective due dates as extended. The Taxpayer paid the assessed penalties and interest, then filed a claim for refund with the IRS, asserting that based on the exception in I.R.C. § 6651(a)(1), he and his wife had "reasonable cause" for failing to file their returns timely. The IRS denied the claim, and the Taxpayer and his wife filed this suit for refund in district court.

## II.

## DISTRICT COURT PROCEEDINGS

The refund suit was filed in November of 1987. Depositions of the Taxpayer and the CPA were taken in October of 1988. Early in 1989, each party filed a motion for summary judgment together with an affidavit and memorandum of authorities. In October, 1989, the district court entered its order granting summary judgment for the government. The Taxpayer then filed a motion for reconsideration pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. In January, 1990, the district court denied the Taxpayer's Rule 59(e) motion, after which a notice of appeal was timely filed on behalf of Taxpayer and his wife.

## III.

## DISCUSSION

This court reviews the grant of summary judgment motion de novo, using the same criteria used by the district court in the first instance. *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir.1988). We "review the evidence and inferences to be drawn therefrom in the light most favorable to the non-moving party." *Baton Rouge Bldg. & Constr. Trades Council v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir.1986) (per curiam) (citing *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 873 (5th Cir.1984)). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." *Id.*

■ Section 6651(a)(1) of the Internal Revenue Code specifies penalties for failure to file a tax return by the due date "unless it is shown that such failure is due to reasonable cause and not due to willful neglect."[2] Any "'cause for delinquency which appears to a person of ordinary prudence and intelligence as a reasonable cause for delay in filing a return ... will be accepted as reasonable.'" *United States v. Boyle*, 469 U.S. 241, 245 n. 1, 105 S.Ct. 687, 689 n. 1, 83 L.Ed.2d 622, 627 n. 1 (1985) (quoting Internal Revenue Manual (CCH) § 4350, (24) ¶ 22.2(3) (Mar. 20, 1980)). To demonstrate "reasonable cause," a taxpayer must show that he exercised "ordinary business care and prudence." Treas. Reg. § 301.6651–1(c)(1) (as amended 1973). "[W]hether the elements that constitute 'reasonable cause' are present in a given situation is a question of fact, but what elements must be present to constitute 'reasonable cause' is a question of law." *Roberts v. Commissioner*, 860 F.2d 1235, 1241 (5th Cir.1988) (citing *Boyle*, 469 U.S. at 249 n. 8, 105 S.Ct. at 692 n. 8). On issues of fact, however, this court views

the evidence in the light most favorable to the Taxpayer as nonmovant, bearing in mind that the Taxpayer and his wife bear the burden of proving that the failure to file timely resulted from "reasonable cause." *See Roberts*, 860 F.2d at 1241.

The government, in its brief to this court and in oral argument, acknowledged that a taxpayer should not be penalized when failure to file his return by the due date results from circumstances beyond his control, citing *Boyle*, 469 U.S. at 248 n. 6, 105 S.Ct. at 691 n. 6 and *Roberts*, 860 F.2d at 1241. But in his oral argument to this court, counsel for the government insisted that under no circumstances should professional advice of an accountant or lawyer relate to a taxpayer's *inability* to file returns in a timely manner and, accordingly, that such advice can never be the basis for applying the "reasonable cause" exception to I.R.C. § 6651. Nonetheless, in its brief to this court, the government stated unequivocally that reliance on professional advice may constitute reasonable cause for late filing.[3]

Neither the Taxpayer nor the government has directed us to a Fifth Circuit case squarely on point, and we are aware of none. Each case cited to this court by the Taxpayer or the government or both falls into one of four categories:

(1) The taxpayer's reliance on an agent to comply with a fixed and unambiguous statutory deadline for filing returns does not constitute "reasonable cause for delay."[4]

**2.** Willful neglect is not at issue in this case.

**3.** The logic of the government's brief is sometimes difficult to follow. On pages 7 and 8, it urges that the Taxpayer must be "unable" to file timely, in the physical or geographical sense, due to circumstances beyond his control. On page 9, the government posits that a taxpayer cannot delegate responsibility for timely filing to his accountant or attorney. Then, on page 10 of the brief, appears the statement, "That is not to say that reliance on professional advice may not constitute reasonable cause for *late* filing." (emphasis added). Mysteriously, that is the lead sentence of a paragraph devoted to distinguishing between *late* filing and *not* filing, in which the government concludes (in direct conflict with the opening sentence) that "Because it

is undisputed that taxpayers were required to file their 1978 and 1979 returns in the case at bar, and knew of their obligation to file, that rule [reliance on professional advice that a return need not be filed at all] does not apply here." Next, from the bottom of page 10 to the top of page 12, the government's brief discusses splits in the circuits on cases in which the taxpayer was unaware of the due date. Finally, on pages 12 and 13, the government submits that other circuits "which have considered this particular question in light of *Boyle* have held that such advice does not constitute reasonable cause."

**4.** *See, e.g., Boyle*, 469 U.S. at 251, 105 S.Ct. at 692; *Alton Ob–Gyn, Ltd. v. United States*, 789 F.2d 515, 516 (7th Cir.1986) (interpreting *Boyle* as meaning that the failure of an agent to timely

(2) The taxpayer's reliance on his agent to ascertain the correct filing date for returns does not constitute "reasonable cause" for delay.[5]

(3) The taxpayer's reliance on the advice of his agent that he need not meet a return filing deadline (or file a return at all) *because no taxes are due* does not constitute "reasonable cause" for delay.[6]

(4) The taxpayer's reliance on the advice of his accountant or tax attorney that no return is due *does* constitute "reasonable cause" for delay.[7]

Accepting, in arguendo, the Taxpayer's version of the facts in this case, it would clearly be distinguishable from the cases in the first three categories. And, while it would closely resemble the cases in the fourth category, the instant case may be distinguishable even from those—as the government contends. The rationale of the holdings in the cases of the first three categories is that "one does not have to be a tax expert to know that tax returns have fixed filing dates and that taxes must be paid when they are due. . . . Reliance by a lay person on [an expert tax advisor] cannot function as a substitute for compliance with an unambiguous statute." *Boyle*, 469 U.S. at 251, 105 S.Ct. at 693. Fixed statutory deadlines for filing tax returns, regardless of whether any taxes are due, are unambiguous. "Reasonable cause" is used in I.R.C. § 6651(a)(1) as a term of art. It is certainly the kind of wording that for all but the most sophisticated taxpayers requires interpretation by an expert tax advisor.

Indeed, the *Boyle* court distinguished the case before it (category 1) from cases in category 4 by noting that "[t]his case is not one in which a taxpayer has relied on the

---

file tax returns does not constitute "reasonable cause"); *Crouse v. United States,* 711 F.2d 102, 104 (8th Cir.1983) (noting that taxpayers could not rely on attorney to timely file return when the taxpayers knew the due date); *Laney v. Commissioner,* 674 F.2d 342, 350 (5th Cir. Unit A Apr. 1982) (holding that the taxpayers could not successfully shift the blame for the late filing of the return to their accountant by arguing that they satisfied the requirements of I.R.C. § 6651(a)(1) by urging the accountant to file on time and that they cannot be blamed if he failed to do so); *Fleming v. United States,* 648 F.2d 1122, 1125 (7th Cir.1981) (holding that a taxpayer cannot blindly rely upon his agent to timely file a return or an extension); *Millette & Assocs., Inc. v. Commissioner,* 594 F.2d 121, 124–25 (5th Cir.) (holding that the taxpayer cannot delegate the duty to timely file a return to an agent), *cert. denied,* 444 U.S. 899, 100 S.Ct. 207, 62 L.Ed.2d 135 (1979); *Sanderling, Inc. v. Commissioner,* 571 F.2d 174, 177 (3d Cir.1978) (noting that if the due date is known to the taxpayer, the taxpayer cannot blame the failure to timely file on an agent); *United States v. Kroll,* 547 F.2d 393, 396 (7th Cir.1977) (holding that the failure of the taxpayer's agent to present him with the return for his signature before the filing deadline "must put him on notice that reliance on the attorney or accountant is not an exercise of ordinary business care and prudence").

5. *See, e.g., Estate of Kerber v. United States,* 717 F.2d 454, 455–56 (8th Cir.1983), *cert. denied sub nom. Doring v. United States,* 469 U.S. 1188, 105 S.Ct. 955, 83 L.Ed.2d 962 (1985); *Smith v. United States,* 702 F.2d 741, 743 (8th Cir.1983) (executor had nondelegable duty to file a timely return, and reliance on the mistaken advice of a tax advisor as to the due date is not sufficient to constitute "reasonable cause" for failing to fulfill that duty (following *Boeving v. United States,* 650 F.2d 493, 495 (8th Cir.1981) and *Estate of Lillehei v. Commissioner,* 638 F.2d 65, 66 (8th Cir.1981))).

6. *See, e.g., Jackson v. Commissioner,* 864 F.2d 1521, 1527 (10th Cir.1989) (holding that the taxpayer must bear the risk of an expert's advice concerning the amount of tax owed when the taxpayer fails to comply with a known duty to file a return); *Ballard v. Commissioner,* 854 F.2d 185, 189 (7th Cir.1988) (holding that the taxpayer's reliance on the advice of her attorney that no penalty would result from a late filing since she would end up not owing any taxes, did not constitute "reasonable cause" for delay); *see also Rubber Research, Inc. v. Commissioner,* 422 F.2d 1402, 1407 (8th Cir.1970) (holding that an assertion on appeal that a company that failed to file a return one year had received legal advice that no tax was due did not amount to a showing of "reasonable cause").

7. *See, e.g., Boyle,* 469 U.S. at 250, 105 S.Ct. at 692; *Fleming v. United States,* 648 F.2d 1122, 1129 (7th Cir.1981); *United States v. Kroll,* 547 F.2d 393, 395–96 (7th Cir.1977); *Commissioner v. American Ass'n of Eng'rs Employment, Inc.,* 204 F.2d 19, 21 (7th Cir.1953); *Burton Swartz Land Corp. v. Commissioner,* 198 F.2d 558, 560 (5th Cir.1952); *Haywood Lumber & Mining Co. v. Commissioner,* 178 F.2d 769 (2d Cir.1950); *Orient Inv. & Fin. Co. v. Commissioner,* 166 F.2d 601 (D.C.Cir.1948); *Hatfried, Inc. v. Commissioner,* 162 F.2d 628 (3d Cir.1947); *Estate of DiPalma v. Commissioner,* 71 T.C. 324, 327 (1978).

erroneous advice of counsel concerning a question of law." *Boyle*, 469 U.S. at 250, 105 S.Ct. at 692 (citing category 4 cases as examples of justifiable reliance on expert advice about a question of law). The rationale for treating a category 4 case as constituting "reasonable cause" for delay is that "it is reasonable for the taxpayer to rely on the substantive advice of the professional" that it is unnecessary to file a return because "[r]equiring the taxpayer to confirm independently that advice would 'nullify the very purpose of seeking the advice of a presumed expert in the first place.'" *Jackson v. Commissioner*, 864 F.2d 1521, 1527 (10th Cir.1989) (quoting *Boyle*, 469 U.S. at 251, 105 S.Ct. at 692).

Thus, just as cases in the fourth category involve questions of tax law about whether taxpayers must file returns at all, it follows in the instant case that whether the Taxpayer's difficulty in resolving the discrepancy in the stock purchase agreement constituted "reasonable cause" for delay under I.R.C. § 6651(a)(1) may well have involved questions of tax law about which the Taxpayer might justifiably rely on the CPA for advice.[8]

This conclusion is consistent with *Boyle* but would appear to conflict with the post-*Boyle* holding in *Ballard v. Commissioner*, 854 F.2d 185, 187 (7th Cir.1988). In *Ballard* the Seventh Circuit seems to have afforded *Boyle* an overly broad interpretation, construing it to hold that "a taxpayer who does not file any return on the advice of his attorney has shown 'reasonable cause' but a taxpayer who has been advised that a late filing will result in no penalty had not." We read *Boyle's* holding more narrowly, simply that the "failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent" to make the filing for him. *Boyle*, 469 U.S. at 252, 105 S.Ct. at 693. Under our reading, *Boyle* did not, as read by the Seventh Circuit, decide whether the failure

to file a return timely can be excused by the taxpayer's reliance on the advice of an expert about a question of law that, for example, "reasonable cause" for delay does exist. Indeed, on at least two occasions, the Eighth Circuit has left open the possibility that a taxpayer's reliance on the advice of counsel that "reasonable cause" for delay exists might itself constitute "reasonable cause."[9]

■ If this court now were to make a pronouncement either (a) that under no circumstances can advice from an accountant or an attorney constitute reasonable cause for late filing when the taxpayer is aware that a return must be filed and is aware of the deadline, or, (b) that under a given set of facts such advice could constitute reasonable cause, we might unwittingly create a conflict with one or more other circuits and, more importantly, would be doing so in obiter dictum. Doing that in this case is unnecessary. Even if we assume as urged by the Taxpayer that the rule is or should be that a taxpayer, who is told by a properly credentialed legal or accounting advisor that as a matter of tax law a taxpayer's return need not be filed by a due date known to the taxpayer, has reasonable cause not to file timely, we would still be required to affirm the holding of the district court.

The Taxpayer contends that he received such advice: that the CPA, who was at one time the tax partner in charge of the Houston office of the fourteenth largest accounting firm in the nation, advised the Taxpayer that as a matter of tax law and irrespective of the expiration of the ultimate extension dates for the returns in question, it was neither necessary nor proper for the Taxpayer to file those returns until the stock purchase agreement could be amended to conform with the realities of the transaction. The district court found otherwise, and we agree. Neither the Taxpayer's deposition nor the CPA's deposition

---

8. Whether accurate tax returns for Taxpayer could have been timely filed was not a simple question. Complex and difficult calculations were required to produce an accurate tax return.

9. *See Estate of Kerber v. United States*, 717 F.2d 454, 455 (8th Cir.1983), *cert. denied sub. nom. Doring v. United States*, 469 U.S. 1188, 105 S.Ct. 955, 83 L.Ed.2d 962 (1985); *Smith v. United States*, 702 F.2d 741, 743 (8th Cir.1983).

or affidavit provides support for the Taxpayer's contention even when viewed, as it must be, in the light most favorable to the Taxpayer.

The Taxpayer's deposition reflects that he depended on his accountants to take care of extensions and of meeting deadlines. Doing that constitutes an unauthorized delegation of the Taxpayer's responsibility, not reliance on advice. When questioned about receiving such advice, the Taxpayer responded that he did not recall receiving any advice from the CPA or any other accountant to the effect it was not necessary to file the 1978 return on time. In fact, the Taxpayer said, "We all know that you are supposed to file a return within a timely manner. It was just the fact that if we couldn't do the return properly, it would be better to hold off until we got the issue resolved." At another point when the Taxpayer was asked, "Do you recall your CPA's ever informing you of the consequence of late filing?" he answered:

"You know, I am sure that might have come up; I'm not positive about that. You know, back in '79, we were in the middle of a construction project. I knew that I had some offsets that would be coming to me, construction interests and so forth; and I knew that I—I felt that we wouldn't have to pay taxes. And that was certainly another reason that I wasn't that concerned. It was a rather large project and I thought it would offset this completely.

"Not that that's any justification for it by any means. It wasn't the—it wasn't the reason, it was really that—trying to get those papers amended. But I felt secure in my mind that we wouldn't have any taxes owed...."

When, in the same colloquy, the Taxpayer was asked, "But I gather, then, you didn't receive advice from [the CPA] or his firm that because no taxes would be owed, you didn't have to file the return on time?" he responded negatively.

More damaging to the Taxpayer's contention is the deposition testimony of the CPA. When asked what advice he gave the Taxpayer before passage of the October 15, 1979, deadline concerning the need to file on or before the deadline date, the CPA responded, "Well, I think that I had not direct contact with him at that time.... I don't recall that I had any personal contact with him. But at that stage it was nothing more than from my point of view of waiting to hear that the corrected or amended [sales contract] had been received."

When the CPA was asked the key question, "Did you ever advise [the Taxpayer] with respect to his 1978 return that it was not necessary to file the return on time for some reason?", the CPA's response was an artful example of neither cooking his client's goose nor confessing to professional negligence or worse: "I am certain that I said that, and I think it was conveyed to him, that because of the substantial variation in the way the document was written with the way that the books were maintained at the corporation, that to file a return that was materially—and we knew it to be incorrect—was not certainly not what we as a firm would propose to do."

■ At another point when asked, "Did you ever discuss with [the Taxpayer] the exception to the failure to file timely penalty for reasonable cause and what was reasonable cause?", the CPA responded, "I know that we had some discussions on that. I don't know what they were specifically. I think that we discussed the reasonable cause issue with [the IRS auditor].[10] And I think it was her statement

10. In September of 1980, shortly before the October 15, 1980, filing deadline for the 1979 return, the IRS initiated an audit of the corporation's 1978 return. The IRS agent then extended the scope of the audit to include the Taxpayer's personal returns for 1978 and 1979. Under the urging and insistence of the IRS auditor, the Taxpayer's CPA prepared and submitted tentative returns for 1978 and 1979.

The Taxpayer argued in its brief that his CPA contemplated filing both the 1978 and 1979 returns in October of 1980, but that "the turmoil of the newly-commenced IRS audit ... reasonably justified postponing the filing of these returns in the CPA's professional opinion."

The onset of an audit in September of 1980 could not have constituted reasonable cause for

that caused us to go ahead and prepare, as I said, tentative returns. I wasn't professionally satisfied that was the right thing to do." The CPA also testified that, in response to the Taxpayer's telephone calls about filing returns, the CPA had responded, "Well, I won't file it unless those amended documents are there." Later, in response to a question about his own awareness of any provisions that excuse the late filing penalty if there is reasonable cause for late filing, the CPA responded, "I am not aware of that. I don't know what 'reasonable cause' would be described to be. I think that we had reasonable cause not to file this—not to *prepare* this return." (emphasis added).

Like his deposition testimony, the CPA's affidavit gallantly straddles the fence in a vain effort to support his client's failure to file returns timely, without at the same time inculpating the CPA's firm or perjuring himself.

The inescapable conclusion from careful readings of the depositions and affidavits is that the CPA never clearly and expressly advised the Taxpayer that, as a matter of tax law, it was not necessary that the returns be timely filed despite knowledge of the final, unextendable deadlines. Rather, the picture emerges of (1) an accounting firm unwilling to prepare and sign returns which were not supported by business documentation and which did not accurately reflect the true substance of the transaction; and (2) a taxpayer willing to miss known filing deadlines because his accountants were unwilling to prepare returns acceptable to the Taxpayer who was himself incapable of preparing them on his own.

Those conclusions are admittedly inferential. A fact that is not inferential, however, but is abundantly clear from the summary judgment evidence is that the Taxpayer has not and cannot demonstrate reliance on tax law advice from the CPA sufficient to constitute reasonable cause

for failure to file the subject return timely, even if we assume, without holding, that such advice could constitute "reasonable cause" for purposes of the exception contained in I.R.C. § 6651(a)(1).

For the foregoing reasons the judgment of the district court is

AFFIRMED.

---

delay in filing the 1978 return, which by extension had been due on October 15, 1979, almost one year before the audit commenced. Furthermore, we cannot know when the Taxpayer would have actually filed the returns had the IRS auditor not insisted that the returns be

filed. And, after examining the record, we find no indication whatsoever that the CPA advised the Taxpayer that, as a matter of tax law, it was not necessary that the returns be timely filed because the IRS audit constituted reasonable cause for delay.